796 P.2d 899

Phyllis ETHRIDGE, Bettie Mazel, and Mildred Eaves, Plaintiffs/Appellants,

v.

ARIZONA STATE BOARD OF NURS-ING; John Does A–Z; Jane Does 1–Z, Defendants/Appellees.

No. 2 CA–CV 89–0132.

Court of Appeals of Arizona, Division 2, Department A.

Dec. 21, 1989.

Reconsideration Denied Feb. 8, 1990.

Review Denied Sept. 18, 1990.

Murphy, Goering, Roberts & Holt, P.C. by Thomas M. Murphy and Michael F. McNamara, Tucson, for plaintiffs/appellants.

Robert K. Corbin, Atty. Gen. by Montgomery Lee, Phoenix, for defendants/appellees.

William R. Hobson, Phoenix, for amicus curiae Arizona Nurses Ass'n.

## OPINION

ROLL, Presiding Judge.

Appellants Phyllis Ethridge, Bettie Mazel, and Mildred Eaves appeal from the superior court's review of the Arizona Board of Nursing's disciplinary action. For the reasons set forth below, we affirm in part and vacate in part.

## FACTS

Phyllis Ethridge, Bettie Mazel, Mildred Eaves, and three other individuals are nurses licensed by the State of Arizona and employed at Carondelet St. Mary's Hospital and Health Center (St. Mary's). Ethridge is the nursing director, Mazel is the unit director of the burn unit, and Eaves is a staff nurse on the burn unit. The three other individuals are a staff nurse on the burn unit, the infection control nurse, and the supervisor of all critical care units.

The burn unit at St. Mary's is an intensive care unit with inpatient and outpatient services for burn victims. The unit has no full-time director and is staffed by attending physicians who are private doctors in the community. During 1985, several staff nurses on the burn unit complained to Ethridge and Ethridge's supervisor about problems related to scheduling, morale, and nursing practice. Regular staff meetings were held but no hospital policies or procedures were altered.

On August 8, 1986, several staff nurses swore out complaints to the Arizona Board of Nursing (the Board). The numerous allegations were within three categories: (1) issues concerning nursing practices, (2) possible drug diversion and falsification of records, and (3) failure of supervisors and administrators to take corrective action once aware of problems. In 1986 and 1987, the Board conducted an investigation. Board staff interviewed the complainants, reviewed 8,000 pages of hospital records and policies, and interviewed the appellants. The Board filed formal charges in October 1987. In all, 20 charges were brought against six nurses.

In December 1987, four days of hearings were conducted before a hearing officer for the Board. The hearing officer sent findings of fact, conclusions of law, and recommendations to the Board. At a public meeting, on February 18 and 19, 1988, the Board heard from the nurses and considered the hearing officer's recommendations.

On April 18, 1988, the Board issued findings of fact, conclusions of law, and an order. The Board found insufficient evidence to support the charges against one burn unit staff nurse and one infection control nurse, and sufficient evidence to support the charges against the supervisor of the critical care units. As to Ethridge, the Board found:

1. Ethridge permitted the use of "Admission Orders for the Burn Unit" in their blank form as "standing orders" when such forms had not been ordered or completed by a physician, which constituted a failure to maintain minimum standards of acceptable and prevailing

nursing practice. A.C.R.R. R4–19–403(1).[1]

2. Ethridge failed to report Mazel's unauthorized removal of Valium as required by A.R.S. § 32–1664(A).

As to Mazel, the Board found:

1. Mazel used "Admission Orders for the Burn Unit" in their blank form as "standing orders" when the forms had not been completed by a physician, which constituted a failure to maintain minimum standards of acceptable and prevailing nursing practice. A.C.R.R. R4–19–403(1).

2. Mazel permitted the use of "Admission Orders for the Burn Unit" in their blank form as "standing orders" when such forms had not been ordered or completed by a physician, which constituted a failure to maintain minimum standards of acceptable and prevailing nursing practice. A.C.R.R. R4–19–403(1).

3. Mazel applied Travase, an enzymatic debriding medication, without prior physician orders, which constituted a failure to maintain minimum standards of acceptable and prevailing nursing practice. A.C.R.R. R4–19–403(1).

4. Mazel removed drugs from the work place without authorization and falsified an entry when she removed a vial of injectable Valium from the burn unit in order to treat a member of her family, which constituted a failure to maintain minimum standards of acceptable and prevailing nursing practice. A.C.R.R. R4–19–403(1), (10), and (13).

5. Mazel failed to properly supervise tank room attendants who were performing debriding of burn wounds, applying enzymatic debriding agents such as Travase, and using anti-bacterial creams on patients, which violated A.R.S. § 32–1663(D)(4) and A.C.R.R. R4–19–402(C)(1)(b).

As to Eaves, the Board found:

1. Eaves used "Admission Orders for the Burn Unit" in their blank form as "standing orders" when the forms had not been completed by a physician, which constituted a failure to maintain minimum standards of acceptable and prevailing nursing practice. A.C.R.R. R4–19–403(1).

2. Eaves made an inadequate chart entry on April 23, 1985, which did not provide sufficient detail to show what activity had been performed or what actions were taken, and constituted a failure to maintain minimum standards of acceptable and prevailing nursing practice. A.C.R.R. R4–19–403(1) and (5).

3. Eaves administered Percocet–Demi to a patient without first obtaining physician orders, which constituted a failure to maintain minimum standards of acceptable and prevailing nursing practice. A.C.R.R. R4–19–403(1).

The Board found that these violations of A.C.R.R. R4–19–403 constituted unprofessional conduct pursuant to A.R.S. § 32–1663 and were cause for discipline. The Board ordered that (1) Ethridge be censured and placed on 12 months' probation (as terms of her probation, Ethridge must obtain a passing grade in a course in medical-legal ethics and implement procedures at St. Mary's to ensure that nursing staff do not administer medication without a prior order from a physician); (2) Mazel be censured and placed on 12 months' probation (as terms of her probation, she must obtain passing grades in a medical-legal ethics course and submit quarterly reports from her supervisor to the Board, pertaining to her work performance); and (3) Eaves be censured.

Ethridge, Mazel, and Eaves appealed the Board's decision to the Pima County Superior Court. The trial court found that substantial evidence existed to support all violations. The court, however, ruled that conclusions of law numbers 2 and 3 were invalid because Ethridge, Mazel, and Eaves had not been charged in the complaint with a violation of A.C.R.R. R4–19–403(1) through using or permitting the use of blank "Admission Orders for the Burn

---

**1.** The Official Compilation Administrative Rules and Regulations are cited A.C.R.R.

Unit" as "standing orders." [2]

The trial court also found that A.R.S. § 32–1663(D)(4) and A.C.R.R. R4–19–1403(1), (5), (10), and (13) were not constitutionally infirm because of vagueness or otherwise; there was no unconstitutional delegation of legislative authority; there was no showing of bias or selective enforcement of regulations; Ethridge, Mazel, and Eaves were not placed in double jeopardy; appellants lacked standing to complain of any illegal search or seizure or to invoke the patient-physician privilege; the exclusionary rule is not per se applicable to administrative hearings; and the Board did not violate the open meeting statute. The court remanded the case to the Board for the limited purpose of determining whether the Board's previous sanctions remained appropriate in light of the superior court's vacating of the board's finding that blank forms had been misused as standing orders.

Ethridge, Mazel, and Eaves appeal the trial court's order.[3]

## ISSUES ON APPEAL

On appeal, appellants argue that (1) there is not substantial evidence to support the Board's findings that appellants engaged in unprofessional conduct; (2) the statute and regulations are unconstitutional because the legislature's delegation of authority to the Board to adopt regulations defining unprofessional conduct violates the separation of powers doctrine and the statutes and regulations are unconstitutional as applied to the appellants; and (3) appellants were denied procedural due process.

## STANDARDS OF REVIEW

When an administrative decision is appealed to the superior court pursuant to the Administrative Review Act,[4] the superior court decides whether the administrative action was illegal, arbitrary, capricious, or involved an abuse of discretion. On appeal to this court, we must search the record for substantial evidence to support the lower court's decision. *Sundown Imports, Inc. v. Arizona Dept. of Transp.*, 115 Ariz. 428, 431, 565 P.2d 1289, 1292 (App.1977). However, when the issue is an interpretation of law by the agency, this court is free to draw its own legal conclusions and determine whether the agency erred in its interpretation of the law. *Eshelman v. Blubaum*, 114 Ariz. 376, 378, 560 P.2d 1283, 1285 (App.1977).

### Substantial Evidence

Ethridge, Mazel, and Eaves argue there is insufficient evidence to support the Board's conclusion that they engaged in unprofessional conduct. In *Tucson Pub. School Dist. No. 1 v. Green*, 17 Ariz.App. 91, 495 P.2d 861 (1972), this court stated:

> The terms "arbitrary, capricious and unreasonable conduct" so as to constitute a manifest abuse of discretion calling for judicial intervention means unreasoning action, without consideration and in disregard for facts and circumstances; where there is room for two opinions, the action is not arbitrary or capricious if exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached.

17 Ariz.App. at 94, 495 P.2d at 864.

The trial court and this court do not weigh the evidence and substitute their

---

**2.** The trial court found that substantial evidence exists that blank admission forms were misused as standing orders. However, the trial court ruled that the misuse of these forms was inadequately charged in the complaint and, accordingly, these violations had to be vacated. The trial court then remanded this case to the Board for the limited purpose of determining whether, in view of the dismissal of the charges alleging use of blank admission forms as standing orders, it was appropriate to modify the sanctions imposed. The state does not cross-appeal the trial court's findings.

**3.** Mazel does not appeal the charge of failure to maintain minimum standards of acceptable and prevailing nursing practice by the unauthorized removal of drugs from the work place and falsifying an entry when she removed a vial of injectable Valium from the burn unit in order to treat a member of her family. A.C.R.R. R4–19–403(1), (10), and (13).

**4.** A.R.S. §§ 12–901 to –914.

findings for that of the agency. *Plowman v. Arizona State Liquor Bd.*, 152 Ariz. 331, 335, 732 P.2d 222, 226 (App.1986). In *Blake v. City of Phoenix,* 157 Ariz. 93, 754 P.2d 1368 (App.1988), this court stated:

> The court may not intervene if there is "any" evidence to support the administrative decision, and should not weigh the evidence in making that determination. We will not substitute our judgment for that of the agency if it was persuaded by the probative force of the evidence before it. We will not substitute our judgment for that of the board, even where the question is faulty or debatable and one in which we would have reached a different conclusion had we been the original arbiter of the issues raised by the application.

*Id.* at 96, 754 P.2d at 1371 (citations omitted).

### A. *Nurse Ethridge: Failure to Report*

■ The Board found that Ethridge engaged in unprofessional conduct when she failed to report Mazel's unauthorized removal of Valium from the burn unit. Mazel removed a 2 cc., 10 mg. vial of injectable Valium, listed the Valium under a discharged patient's name in the pharmacy log, and backdated the entry. She used the Valium to treat her husband's foot ulcer. Mazel had discussed this treatment of her husband with Dr. Pierce, a burn unit surgeon. Dr. Pierce would have prescribed Valium had Mazel asked.

Mazel's action was reported to supervisory staff, who placed Mazel on one year's probation.[5] Ethridge and her supervisor reviewed the 1983 Nurse Practice Act,[6] determined that Mazel was not a threat to the public, and decided not to report her action to the Board. The Board found that Ethridge's failure to report Mazel violated A.R.S. § 32–1664, which states in part:

> Any professional or practical nurse or any health care institution as defined in § 36–401 *shall,* and any other person may, *report* to the board any information such nurse, health care institution or individual may have which appears to show that a professional or practical nurse is, was or may be a threat to the public health or safety.
>
> \* \* \* \* \* \*
>
> It is an act of unprofessional conduct for a professional or practical nurse to fail to report pursuant to this section, except that a nurse who is providing therapeutic counseling for nurses who enter drug rehabilitation programs is only required to report on the nurse in the drug rehabilitation program if the nurse providing the counseling has personal knowledge of patient safety being jeopardized.

(Emphasis added.)

The hearing officer found insufficient evidence to support any disciplinary action against Ethridge, noting that the discipline given to Mazel was sufficient corrective action and that there was a reasonable basis for Ethridge to determine that Mazel was not a threat to the public health or safety. Ethridge argues that the Board acted in an arbitrary and capricious manner when it rejected the hearing officer's recommendation and imposed discipline for her failure to report. We disagree.

The Board members reviewed the transcript of the hearing, heard from Ethridge at their public meeting, and determined that her failure to report Mazel's theft of a controlled substance was unprofessional conduct. A review of the record shows the Board accepted the hearing officer's findings of fact related to the incident, but reached a different conclusion regarding appropriate discipline. The Board's decision was not arbitrary, capricious, or an abuse of discretion.

### B. *Nurse Mazel*

#### 1. Failure to Adequately Supervise Tank Room Technicians

■ The Board found that Mazel failed to supervise the technicians in the burn unit tank room in violation of A.C.R.R. R4–19–402(C)(1)(b) and A.R.S. § 32–1663(D)(4). The regulation states:

---

**5.** This probation was in-hospital discipline only.

**6.** A.R.S. §§ 32–1601 to –1667.

C. The registered nurse shall be held accountable for the quality and quantity of nursing care given to patients rendered by self or others who are under his or her supervision.

1. The registered nurse may:

\* \* \* \* \* \*

b. Assign the administration of medications to other licensed nurses only;

The burn unit maintains a practice of permitting aides and technicians in the tank room to debride burn wounds, to apply enzymatic debriding agents, and to apply topical antibacterial creams on patients without direct nursing supervision. The nurses are within proximity of the aides and technicians at all times.

The hearing officer found that the state failed to show by a preponderance of the evidence that Mazel had failed to supervise the tank room attendants. The Board and the superior court, however, found sufficient evidence to support the finding. We disagree.

The superior court considered the deposition of Mazel which was not part of the record at the hearing or before the Board. Evidence before the Board was one nurse's testimony that when she worked as a charge nurse, tank room attendants debrided patients and that the nurse left the tank room for long periods of time, although she remained in proximity to the tank room. This witness did not report to Mazel that nurses assigned the administration of medications to non-licensed personnel, but assumed Mazel would know that the tank room was not directly supervised at all times because only one nurse was assigned to night shift.

Nurse Ethridge testified that in her opinion the tank room attendants required direct nursing supervision when applying Travase and debriding patients. The regulation, however, does not demand such supervision. The regulation prohibits a nurse from assigning the administration of medications to the tank room attendants. In other words, although the application of Travase and debriding must be performed under the supervision of a nurse, the task can be performed by attendants. The reg-

ulation does not require the nurse to be in the room at all times to supervise the attendants. There is not substantial evidence to support the finding that Mazel failed to supervise tank room attendants.

2. Administered Medication without Prior Physician's Order

■ The Board found that Mazel administered Travase, an enzymatic debriding medication, without a physician's order. The trial court did not rule on this finding.

Mazel admitted to applying the medication. Evidence showed that the physician ordered Travase the following day. Mazel argues that the "standing orders" on the burn unit authorize her use of Travase. The form, Exhibit 508, contains no notation regarding Travase.

The testimony at the hearing established that the physicians routinely use Travase in their treatment of burn patients, and they trust the judgment of the experienced nurses on the burn unit. This does not justify a nurse administering a prescription medication without a physician's order. The Board's decision that Mazel failed to maintain minimum standards of acceptable and prevailing nursing practice was not arbitrary or capricious and was supported by substantial evidence.

C. *Nurse Eaves*

1. Inadequate Chart Entry

■ The Board found that Eaves failed to maintain standards of acceptable and prevailing nursing practice by making an inadequate chart entry on April 23, 1985. The Board found that the entry did not provide sufficient detail to show what activity had been performed or what actions were taken by Eaves. The regulations pursuant to the Nursing Practice Act state in part:

R4–19–403. Unprofessional conduct, unfitness to practice nursing

For purposes of A.R.S. § 32–1663 unprofessional conduct, unfitness or incompetency by reasons of negligent habits or

other causes includes without limitation the following:

1. Failure to maintain minimum standards of acceptable and prevailing nursing practice;

\* \* \* \* \* \*

5. Failure to maintain for each patient a record which accurately reflects the nursing care and treatment of a patient;

\* \* \* \* \* \*

The Board found:

On April 23, 1985, Respondent Eaves noted that a patient who had been catheterized had voided a "small amount" in the toilet, without estimating the amount of such voiding or the time of occurrence.

Eaves argues that conflicting evidence exists as to whether Eaves' charting was adequate. Two experts testified, one finding her chart entry adequate, the other finding the chart entry inadequate because it failed to note the time of voiding. If the record supports two inconsistent factual conclusions, sufficient evidence exists to support an administrative decision adopting either of the two conclusions. *Webster v. State Bd. of Regents*, 123 Ariz. 363, 365–66, 599 P.2d 816, 818–19 (App.1979). Eaves argues that because her entry was charted at 1500 hours, the time is noted. Eaves' shift ended at 1500 hours, however, so it is ambiguous as to whether 1500 was the time she took the patient to the bathroom or the time she signed off from the shift. The Board's finding that the chart entry was inadequate is supported by the evidence.

Eaves also argues that because the patient was not a burn patient, specific charting was unnecessary. Eaves failed to raise this argument at the hearing or in her appeal to superior court. Accordingly, Eaves has waived her right to raise it in this appeal. *DeGroot v. Arizona State Bd. of Racing*, 141 Ariz. 331, 340, 686 P.2d 1301, 1310 (App.1984).

2. Medication Administered without Obtaining Physician Orders

◼ The Board found that Eaves administered Percocet–Demi to a patient without obtaining physician orders. Eaves argues that the standing orders maintained on the burn unit authorized her to reduce the patient's medication from I.V. Morphine to Percodan–Demi when the patient's tolerance for pain allowed such reduction.

The Board found and the trial court affirmed that the "standing orders" are four pages of a preprinted "Admission Orders for the Burn Unit" form. The form contains blank spaces for physicians to write specific orders, such as the dosage and frequencies of medications, the treatment to be provided depending on the severity of the burns, and diagnostic tests to be performed. These preprinted forms are kept at the nurses' station, are to be completed at the physicians' direction, signed by the physician, and kept in the patient's chart. The physicians and nurses on the burn unit testified that the practice at St. Mary's is to treat the preprinted forms as standing orders to be followed by the nurses in every patient admission whether or not the form is placed in the patient's chart. The nurses exercised their own discretion as to dosage and frequency of medication, what diagnostic tests were needed, and they performed the functions listed on the preprinted admission orders without specific physician approval or direction. The physicians specified, however, that this practice was acceptable only for "experienced nurses." New nurses had to contact the physician. The trial court affirmed the Board's finding that these preprinted burn unit admission forms did not constitute standing orders when the blank spaces had not been completed by a physician.

We have reviewed the record and find there is substantial evidence to support the trial court's finding that these preprinted admission forms did not constitute standing orders. Therefore, Eaves needed a physician's order to administer Percocet–Demi.

Eaves also argues that the routine standing orders had the medication doses and

times completely filled in. However, Exhibit 508 is a copy of the standing orders. At the hearing, Exhibit 508 was reviewed by the four physicians involved with the burn unit and by appellants. All referred to this exhibit as the standing orders. This exhibit contains blank areas for dosage and frequency of medication and was determined insufficient as standing orders.

Without standing orders, the record shows that on June 20, 1985, Eaves administered Percodan–Demi as a step-down drug from I.V. Morphine. She charted this as "S.O. Dr. Pierce/M. Eaves, R.N." Dr. Pierce did not order Percodan–Demi until June 21, 1985, as evidenced by the patient's chart. The chart did not contain a copy of signed "standing orders."

There is substantial evidence that Nurse Eaves administered medication without a physician's order.

### Constitutionality of the Statute and Regulations

Ethridge, Mazel, and Eaves argue that A.R.S. § 32–1663 and regulation A.C.R.R. R4–19–403(1) are invalid. The challenged portion of the statute reads:

D. The board may revoke or suspend any license to practice practical nursing or professional nursing issued under this chapter, or impose a civil penalty, censure or place on probation any person licensed under this chapter, or otherwise discipline any person licensed under this chapter if the licensee is, after hearing, found:

\* \* \* \* \* \*

4. Guilty of unprofessional conduct or unfit or incompetent by reason of negligent habits or other causes.

The regulation states:

**R4–19–403. Unprofessional conduct, unfitness to practice nursing**

For purposes of A.R.S. § 32–1663 unprofessional conduct, unfitness or incompetency by reasons of negligent habits or other causes includes without limitation the following:

1. Failure to maintain minimum standards of acceptable and prevailing nursing practice;

■ An indefinite and incomplete statute may be held invalid on three bases: (1) the language used may not have sufficient legal significance to be capable of intelligent execution; (2) the statute may unduly delegate legislative powers in violation of the separation of powers doctrine under article 3 of the United States Constitution, and (3) as applied, the statute may violate due process under the Arizona Constitution. *Southwest Engineering Co. v. Ernst,* 79 Ariz. 403, 291 P.2d 764 (1955); *State Compensation Fund v. De La Fuente,* 18 Ariz. App. 246, 251–52, 501 P.2d 422, 427–28 (1972). Appellants argue that the statute and regulations violate the separation of powers doctrine and violate due process as applied to them.

### A. *Separation of Powers Doctrine*

■ Ethridge, Mazel, and Eaves argue that the Board has assumed legislative power in excess of the authority granted by the legislature, therefore violating the separation of powers doctrine.

A.R.S. § 32–1606(A)(1) specifically authorizes the Board to adopt rules and regulations necessary to effect the provisions of the statute. The legislature may delegate rule-making authority to an administrative agency so long as the delegating statute contains an intelligible principle to guide the exercise of the delegated discretion. *Industrial Union Dept. v. American Petroleum Inst.,* 448 U.S. 607, 685–86, 100 S.Ct. 2844, 2886, 65 L.Ed.2d 1010, 1061 (1980) (Rehnquist, J., concurring opinion). Appellants argue that the term "unprofessional conduct" is not a sufficiently intelligible principle, and therefore the regulations are arbitrary and an abuse of discretion.

The standards laid down by the legislature may be broad and in general terms. *Haggard v. Industrial Comm'n,* 71 Ariz. 91, 101, 223 P.2d 915, 922 (1950). The legislature does not have to supply administrative officials with a specific formula to guide them when flexibility and adaptabili-

ty are necessary. *State v. Birmingham,* 95 Ariz. 310, 313, 390 P.2d 103, 105 (1964). The test of whether administrative regulations conform to authority granted to the agency by the legislature is whether the regulations as adopted may be reasonably implied from the statutory scheme so as to carry out the purpose and intent of the legislative mandate. *Longbridge Inv. Co. v. Moore,* 23 Ariz.App. 353, 356, 533 P.2d 564, 567 (1975).

A.R.S. § 32–1606(B)(10) directs the Board to "determine and administer appropriate disciplinary action as provided by this section against all licensees found guilty of violating this chapter or rules and regulations promulgated by the board." The legislative language expresses the intent that the Board specify grounds for discipline of licensees in regulations.

The term "unprofessional conduct" is a sufficient directive to guide the Board in its exercise of the delegated discretion. The purpose and intent of the statute is to effectively protect the public health, safety, and welfare. It may reasonably be inferred that regulation R4–19–403 was intended to effectively protect the public health, safety, and welfare. A.R.S. § 32–1663(D) enumerates nine reasons the Board may revoke or suspend a nurse's license. One of these reasons is "unprofessional conduct." In R4–19–403, the Board sets forth 24 types of conduct which may constitute unprofessional conduct or unfitness to practice nursing. The regulations are not a violation of the separation of powers doctrine.

B. *Due Process*

 Ethridge, Mazel, and Eaves argue that the statute and regulations are unconstitutional as applied to their conduct. Appellants assert that "unprofessional conduct" is not defined and should be interpreted as prohibiting conduct that is grossly immoral or dishonorable. *Aiton v. Board of Medical Examiners,* 13 Ariz. 354, 114 P. 962 (1911). We disagree.

A statute denies an individual due process if it forbids or requires the doing of an act in language that is so vague that per-

sons of common intelligence must necessarily guess as to its meaning and will differ as to its application. *Southwest Engineering Co.,* 79 Ariz. at 413, 291 P.2d at 770–71. *See Jordan v. De George,* 341 U.S. 223, 231–32, 71 S.Ct. 703, 708, 95 L.Ed. 886, 892 (1951).

Although appellants rely on *Aiton,* that decision is not dispositive. When *Aiton* was decided, the legislature had not authorized the Board of Medical Examiners to promulgate the rules and regulations necessary to effectuate the statute. Our supreme court pointed out in *Arizona State Bd. of Medical Examiners v. Clark,* 97 Ariz. 205, 398 P.2d 908 (1965), that the restricted meaning given to unprofessional conduct in *Aiton* had been superseded by statutory definition. Here, the statute and the regulations define unprofessional conduct so that reliance on *Aiton* is unnecessary.

A.R.S. § 32–1663 subjects nurses to discipline for unprofessional conduct and eight other acts of misconduct. A.C.R.R. R4–19–403 lists 24 types of conduct constituting unprofessional conduct. Appellants argue that one provision is in itself vague. This provision is: "Failure to maintain minimum standards of acceptable and prevailing nursing practice." A.C.R.R. R4–19–403(1). In *Matter of Appeal in Maricopa County Juvenile Action No. JS–5209 and No. JS–4963,* 143 Ariz. 178, 692 P.2d 1027 (App. 1984), Division One of this court stated:

A statute is unconstitutionally vague if ... it allows for arbitrary and discriminatory enforcement by failing to provide an objective standard for those who are charged with enforcing and applying the law.

 \* \* \* \* \* \*

[A] statute will not be held void for vagueness if any reasonable and practical construction can be given to its language.

*Id.* at 183, 692 P.2d at 1033 (citations omitted).

In *Kibler v. State,* 718 P.2d 531 (Colo. 1986), Colorado reviewed for vagueness the nursing statute's terms "generally accept-

ed standards." The Colorado Supreme Court stated:

> The phrase "generally accepted standards" is a common legal concept that refers to norms of conduct applicable to similar persons in like circumstances. In the case of a medical professional, such as a nurse, compliance with "generally accepted standards" requires the person to exercise that degree of knowledge, skill, and care exercised by other like professionals in the same or a similar community.

718 P.2d at 534–35 (citations omitted).

The phrase "minimum standards of acceptable and prevailing nursing practice" is substantially the same as "generally accepted standards." We agree with the interpretation given this phrase by the Colorado Supreme Court. This phrase requires a nurse to exercise that degree of knowledge, skill, and care exercised by other nurses in Arizona.

Due process does not require more specificity than is reasonably possible under the circumstances. *In re Lewis*, 257 N.W.2d 505, 510 (Iowa 1977). The statute's term "unprofessional conduct" and the regulation's phrase "minimum standards of acceptable and prevailing nursing practice" are sufficiently objective to avoid arbitrary and discriminatory enforcement by the Board, and therefore do not violate appellants' due process.

### Procedural Due Process

Due process requires that a party be given a fair trial and a fair tribunal. *United States v. Superior Court in and for Maricopa County*, 144 Ariz. 265, 280, 697 P.2d 658, 673 (1985). Ethridge, Mazel, and Eaves argue they were denied procedural due process because (1) the Board found violations which were not charged in the complaints filed against Eaves and Mazel, (2) the Board's investigation was fundamentally unfair, (3) the complaining nurses stole documents used against appellants, (4) the Board violated the open meeting law, and (5) the Board was unfairly biased against appellants, and therefore appellants did not receive a fair hearing.

### A. *Notice of Charges*

Eaves and Mazel argue that they were found in violation of charges which were not contained in the complaint and which denied them procedural due process. Since we have already determined that there was insubstantial evidence to support the charge against Mazel that she inadequately supervised the tank room, we need not address the complaint for that charge.

■ As to Eaves, pleadings before an administrative agency are liberally construed. If an issue was actually litigated with reasonable notice and an opportunity to cure surprise, then there may be no subsequent challenge. *Matter of Wickman*, 138 Ariz. 337, 340, 674 P.2d 891, 894 (App.1983). Eaves was charged as follows:

> On or about February 10, 1985, February 11, 1985, February 13, 1985, and April 23, 1985, licensee failed to maintain minimum standards of acceptable and prevailing nursing practice and failed to maintain patient records which accurately reflect the nursing care and treatment of patients M.A., B.B., and R.M., in violation of A.R.S. § 32–1663(D)(4) and A.A.C. R4–19–403(1) and (5).

Appellants take issue with the fact that the Board's initial investigator did not question the April 23, 1985 chart entry as to volume of urine. "The question on review is not the adequacy of the pleadings but the fairness of the entire proceeding before the administrative agency." *Id.* Eaves was charged with inadequate charting for patient R.M. on April 23, 1985. She questioned the state's experts regarding the entries. Testimony discussed whether the patient was catheterized, the amount of urine voided in the bathroom, and the time of the voiding. Reasonable notice was given, the issue was actually litigated, and Eaves does not claim surprise. We find no violation of procedural due process.

### B. *Board's Investigation*

Ethridge, Mazel, and Eaves argue that the Board was reckless in its investigation, prosecution, and deliberation to their ex-

treme prejudice. Appellants cite the publicity generated by the investigation and allege that a defensive posture was assumed by the Board. These broad, unsupported statements cannot be considered. Appellants cite no authority for the proposition that the investigation or procedure should have remained confidential.

### C. *Theft of Records*

█ Ethridge, Mazel, and Eaves argue that the Board, through its investigators, accomplished its investigation through theft of hospital records and through photographs of patients obtained without patient or physician consent. The superior court held that the appellants lacked standing to contest the validity of the search and seizure of the hospital records. We agree.

There is no infringement on a person's fourth amendment rights when damaging evidence, obtained by an illegal search of a third person, is introduced. *State v. Harris*, 131 Ariz. 488, 490, 642 P.2d 485, 487 (App.1982); *Rukas v. Illinois*, 439 U.S. 128, 133, 99 S.Ct. 421, 425, 58 L.Ed.2d 387, 395 (1978).

In any event, the evidence does not show that the Board illegally removed records from St. Mary's. One of the complaining nurses testified that she did not provide documents, photocopies of documents, or photographs of patients to the Board's investigator. A second complaining nurse testified that she may have taken one page from a record and given that page to the investigator, although she could not recollect doing so. A third complaining nurse testified that she took copies of medical records, photographed patients, then gave these to the investigator. She understood that the investigator condoned her actions. The investigator testified that she assumed this nurse had copied the record but denied encouraging or condoning her actions. She stated they did not discuss the origin of the document.

In addition, the documents that were introduced at the hearing were done so through stipulation by both parties. The documents were properly subpoenaed from the hospital. There is no evidence that

appellants moved to suppress the documents or evidence derived from the documents. The Board's investigation did not deny appellants due process.

### D. *Open Meeting Law*

Ethridge, Mazel, and Eaves next argue that the Board deliberated on the charges against appellants in meetings which violated the open meeting law. A.R.S. §§ 38–431.01 and –431.09. A.R.S. § 38–431.09 states in part:

> It is the public policy of this state, reflected in this article, that meetings of public bodies be conducted openly and that notices and agendas be provided for such meetings which contain such information as is reasonably necessary to inform the public of the matters to be discussed or decided.

A.R.S. § 38–431.01 states in part:

> A. All meetings of any public body shall be public meetings and all persons so desiring shall be permitted to attend and listen to the deliberations and proceedings.

> B. All public bodies, except for subcommittees and advisory committees, shall provide for the taking of written minutes or a recording of all their meetings, including executive sessions.

Appellants base their allegation on the affidavit of Mazel's daughter. The affidavit states that Board member Jaskiewicz informed her that he and others had stayed up until 2:00 a.m. following the February 18, 1988 Board meeting and had discussed issues involved in the hearing. The record also contains the affidavit of George Graham, special agent investigator with the office of the Attorney General. Graham states that Jaskiewicz did contact Mazel's daughter and he told her he had stayed up until 2:00 a.m. reviewing the evidence. Jaskiewicz stated he had not discussed the matter with any other Board member. While the evidence is conflicting, the trial court did not abuse its discretion by weighing the evidence and concluding that the Board did not violate the open meeting law.

**108**

### E. *Unfair Bias*

Finally, Ethridge, Mazel, and Eaves argue that they were denied a fair hearing because the Board was incapable of impartial consideration of the allegations against the nurses due to the Board's own irregularities and misconduct. According to the affidavit of Mazel's daughter, two Board members expressed a personal conflict of interest. The record shows Mary Watts disqualified herself because she was employed by Carondelet Health Services. Eileen Breshin stated that she knew Ethridge professionally but felt no bias. Other members stated that they felt no bias. We find no conflict of interest.

Appellants also cited a March 16, 1988 letter from Fran Roberts, Executive Director of the Board, apparently to the editor of a newspaper. The letter does not show that the Board was biased or otherwise unfairly denied appellants a fair hearing. The letter acknowledges events that happened after the hearing, which were apparently a negative response to the hearing.

There is no evidence the Board members were biased or that appellants were denied a fair hearing.

We vacate the finding that Mazel failed to properly supervise tank room attendants and affirm all other findings.

LACAGNINA and HATHAWAY, JJ., concur.