889 P.2d 32

Manuel M. ROMO, Jr., an incapacitated adult by his conservator, Ritha Romo, Plaintiff–Appellant,

v.

Dr. Leonard KIRSCHNER, Director, Arizona Health Care Cost Containment System Administration; Arizona Health Care Cost Containment System Administration, a State Agency, Defendants–Appellees.

No. 1 CA–CV 93–0140.

Court of Appeals of Arizona, Division 1, Department E.

Jan. 17, 1995.

Beckett & Anderson by Robert Beckett, Phoenix, for plaintiff-appellant.

Johnston, Maynard, Grant & Parker by Catherine M. Dodd, Logan T. Johnston, III, Phoenix, for defendants-appellees.

OPINION

LANKFORD, Presiding Judge.

The dispositive question in this appeal is whether a $150,000 trust fund is a resource which disqualifies the trust beneficiary from indigent health care.

The conservator for Manuel M. Romo, Jr. brings this appeal from a superior court judgment affirming an administrative decision which had denied Mr. Romo eligibility for long term nursing care benefits. The administrative decision was made by the Director of the Arizona Health Care Cost Containment System Administration ("AHCCC-SA"), which administers *indigent health care* benefits. The · superior court ruled that AHCCCSA properly counted the trust as a resource available to Romo in evaluating his eligibility for benefits.

We agree with the superior court and hold that the trust can be considered as an available resource.[1]

The basic facts are these. Mr. Romo is a 31 year-old man with severe physical and mental disabilities caused by a medication overdose in 1984. Romo since has resided in various nursing ·care facilities. His mother, Ritha Romo, is the conservator of Romo and his estate. Romo has been receiving AHCCCSA nursing care benefits since 1989.

In 1989, Ritha Romo brought a lawsuit against the Havasu Nursing Center on behalf of herself and her son for personal injuries which he suffered while residing at this facility. The defendant's liability insurer ultimately agreed to settle the claims and pay each plaintiff $250,000.

In 1991, Ritha Romo petitioned the Tribal Court of the Colorado Indian Tribes for approval of the settlement. She proposed to have the insurer pay $150,000, the amount of Mr. Romo's settlement less attorneys' fees, to a trust for his benefit. She would act as trustee. The trust document declared that its purpose was to provide "supplemental" care and services for Romo "over and above the [governmental] benefits he otherwise re-

ceives as a result of his disabilities ..." Romo's heirs were the residual beneficiaries of the trust.

The Tribal Court approved the settlement and the trust and directed the insurer to pay Romo's net share of the settlement proceeds to the trust. Ritha Romo then notified AHCCCSA of the existence of the settlement and trust.

In response, AHCCCSA determined that the trust constituted an available resource which disqualified Mr. Romo from further subsidized long term care benefits. Ritha Romo timely appealed that determination to the Director. After a hearing, the Director confirmed the termination of Romo's benefits.

Ritha Romo filed an action in the superior court for review of the Director's decision under the Administrative Review Act, Ariz. Rev.Stat.Ann. ("A.R.S.") sections 12–901 to 12–914. The superior court judge affirmed the Director's decision.

## I.

When an administrative decision is appealed to this Court pursuant to the Administrative Review Act, we review the superior court's judgment to determine whether the record contains evidence to support the judgment. *Ethridge v. Arizona State Bd. of Nursing,* 165 Ariz. 97, 100, 796 P.2d 899, 902 (App.1989). In doing so, we reach the same underlying issues as the superior court: whether the administrative action was illegal, arbitrary, capricious or involved an abuse of discretion. *Havasu Heights v. Desert Valley Wood,* 167 Ariz. 383, 386, 807 P.2d 1119, 1122 (App.1990). When the issue involves an interpretation of law by the administrative agency, this Court is free to reach its own legal conclusion. *Eshelman v. Blubaum,* 114 Ariz. 376, 378, 560 P.2d 1283, 1285 (App. 1977). Nevertheless, an agency's interpretation of statutes or regulations which it implemented is generally afforded great weight. *Capitol Castings v. Dept. of Economic Sec.,*

---

1. Because we hold that the trust can be considered in determining eligibility, we need not and do not reach the alternative argument offered by appellees. They argued that even if the trust

were not considered, its creation involved a transfer of Romo's assets without consideration and thus would be subject to certain statutory penalties. *See* 42 U.S.C. § 1396p(c).

171 Ariz. 57, 60, 828 P.2d 781, 784 (App.1992), *citing Metro Mobile CTS, Inc. v. Newvector Comm., Inc.,* 661 F.Supp. 1504, 1512 (D.Ariz. 1987), *aff'd,* 892 F.2d 62 (9th Cir.1989).

■ The ultimate issue in this case is whether the trust created for Romo's benefit should be counted as a resource available to him. Under federal law, a state participating in the Medicaid program must establish resource standards for the determination of eligibility based only on "such income and resources as are ... *available* to the applicant or recipient." 42 U.S.C. § 1396a(a)(17)(B) (emphasis added). Arizona has elected to participate in the Medicaid program by establishing AHCCCSA. A.R.S. §§ 36–2901 *et seq.* Ritha Romo argues that the trust should not be counted because the Tribal Court and the liability insurer, rather than Romo, are the grantors of the trust. AHCCCSA counters that the trust was funded at the direction of Romo's conservator, with Romo's money, for Romo's benefit. Thus, AHCCCSA contends, Romo is in actuality the grantor, and the trust funds are an available resource to Romo.

The identity of the grantor is important under 42 U.S.C. § 1396a(k)(2). In 1986, Congress enacted this provision to close a loophole in the eligibility criteria. Prior to this legislation, individuals seeking indigent health care could establish eligibility by transferring their assets to trusts, thereby reducing their resources for eligibility purposes, and yet preserving the assets for their heirs. Consequently, Congress passed 42 U.S.C. § 1396a(k) to ensure that "the individuals receiving nursing home and other long-term care services under Medicaid are in fact poor and have not transferred assets that should be used to purchase the needed services before Medicaid benefits are made available." H.Rep. No. 99–265, 99th Cong., 1st Sess. 71 (1985).

■ A trust is to be considered in evaluating eligibility if it is a Medicaid Qualifying Trust ("MQT"). A trust constitutes an MQT if it is *"established* (other than by will) *by an individual* (or an individual's spouse) *under which the individual may be the beneficiary* of all or part of the payments from the trust and the distribution of such payments is determined by one or more trustees who are permitted to exercise any discretion with respect to the distribution to the individual." 42 U.S.C. § 1396a(k)(2) (emphasis added)[2]. Trusts established by others, such as a parent for a child, are not Medicaid Qualifying Trusts. The amount from the trust deemed available to the applicant is the "maximum amount of payments that may be permitted under the terms of the trust to be distributed to the grantor, assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount to the grantor." 42 U.S.C. § 1396a(k)(1).

Ritha Romo asks us to hold that because the trust was not "established by" Mr. Romo, it is not an MQT under 42 U.S.C. § 1396a(k)(2). She reasons that Mr. Romo was not the grantor of the trust because it was established or approved by the Tribal Court at the request of his conservator.

We think such a distinction is a technical one that makes no difference to the determination of eligibility for indigent health care. In reality, the trust was created by Mr. Romo. His conservator merely acted on his behalf, and the Tribal Court approved the arrangements made by the conservator. Moreover, the trust was funded by the proceeds from the settlement of his personal injury claim. "A trust is established by the person who provides the consideration for the trust even though in form it is created by someone else." *Forsyth v. Rowe,* 226 Conn. 818, 629 A.2d 379, 384 (1993) (holding that the trust was an MQT). *See also Barham By Barham v. Rubin,* 72 Haw. 308, 816 P.2d 965, 967 (1991) (holding that a trust was an

---

**2.** We note that Congress amended the Medical Assistance Programs Act, 42 U.S.C. § 1396, in 1993. The 1993 amendment repealed the MQT provision, 42 U.S.C. § 1396a(k), and exempted certain inter vivos trusts from the transfer penalties set forth in 42 U.S.C. § 1396p. Under the amended version, the creation of a trust funded with the assets of a disabled individual under the

age of 65 by a parent, grandparent, legal guardian or a court is not subject to the transfer penalties "if the State will receive all amounts remaining in the trust upon the death of [the] individual up to an amount equal to the total medical assistance paid on behalf of the individual" under the Medicaid programs. 42 U.S.C. § 1396p(d)(4)(A).

MQT despite fact that probate court established it). Accordingly, we hold that the trust was in reality created by Mr. Romo and may be counted in determining his eligibility.

Any other holding would frustrate the intent of Congress. Congress intended to restrict eligibility to those lacking the resources to pay for their own care and to prevent those seeking subsidized benefits from retaining assets which should be used to pay for such care. Congress passed the Medicaid Qualifying Trust statute for these purposes.

In addition, allowing this trust to be excluded from the evaluation of eligibility would be manifestly unfair to others who have been required to exhaust their assets before receiving benefits. The distinction drawn by appellant heightens the apparent unfairness: a beneficiary who is represented by a conservator and has his trust approved by a court may preserve his assets, while one who lacks a conservator and court approval loses them. *See Hatcher v. Department of Health & Rehab. Serv.*, 545 So.2d 400, 402 (Fla.App.1989) ("[R]ecipients of public assistance should not be able to avoid the spirit of the law by use of a guardian."). Moreover, appellant's argument undoubtedly would result in sizeable assets becoming exempt from the ordinary requirement that the assets be expended before public assistance is granted, thereby placing a strain on limited governmental resources for indigent health care. *See Forsyth v. Rowe*, 629 A.2d at 385 ("The medicaid program would be at fiscal risk if individuals were permitted to preserve assets for their heirs while receiving medicaid benefits from the state.").

We recognize that the courts of some jurisdictions have reached the opposite conclusion. We are unpersuaded by these decisions.

For example, two courts found it dispositive that the intent of the trust was to merely supplement governmental health care benefits. *Trust Co. of Okl. v. State ex rel. Dep't of Human Serv.*, 825 P.2d 1295 (Okl.1991), *cert. denied, Okl. Dept. of Human Serv. v. Trust Co. of Okl.*, —— U.S. ——, 113 S.Ct. 300, 121 L.Ed.2d 224 (1992); *Missouri Div. of Family Serv. v. Wilson*, 849 S.W.2d 104 (Mo.App.1993). That approach merely gives license to transfer assets into a trust which, if the trust documents recite an intent to supplement governmental benefits, will be shielded from otherwise applicable eligibility standards. In our view, that would reopen the very loophole Congress sought to close.

Nor are we persuaded by decisions such as *Kegel v. State*, 113 N.M. 646, 830 P.2d 563 (App.1992). In that case, the trust apparently was created by the tort defendants and the conservator for the benefit of a physically disabled seven-year-old boy. The trust was funded by the proceeds of a tort settlement. The court argued that the beneficiary never actually had "unrestricted legal or equitable title" to the settlement proceeds. *Id.*, 830 P.2d at 567. We think it would undermine the eligibility standards to permit their evasion by the use of guardians, conservators, judges or others to create the trust in the beneficiary's stead. Moreover, it is the beneficiary's *entitlement* to the settlement proceeds, not whether they were literally paid into his hands, that indicates whether the beneficiary funded the trust.

Finally, we cannot adopt the reasoning of *Miller v. Ibarra*, 746 F.Supp. 19 (D.Colo. 1990). In that case, the court held that the supplemental trusts created by the probate courts on behalf of four elderly incompetents were not MQT's. We have already rejected the idea that merely structuring an otherwise disqualifying trust as "supplemental" to governmental benefits can place the trust assets beyond the reach of eligibility considerations. We also note that in *Miller*, the court's holding avoided the unfairness of Colorado's "Utah Gap" rule, which apparently disqualifies potential beneficiaries even when their health care expenses far exceed their assets. This rule is unlike Arizona's program, which allows an applicant for benefits to "spend down" resources to the eligibility level, when he or she will then receive benefits. *See Barham*, 816 P.2d at 966 (distinguishing *Miller* on this basis). *See also* A.R.S. §§ 11–297(E)(1) and 36–2905(E)(1).

We think that *Barham, Forsyth* and *Hatcher* are the better-reasoned decisions. They preserve the integrity of indigent

health care eligibility standards and effectuate the federal statutory purpose of closing the trust loophole. To require the taxpayers to pay for Romo's medical expenses while he shelters $150,000 in a trust would violate the federal statute and undermine the indigent health care policy.

The trust in this case was an MQT. The defendants were therefore entitled to consider it in determining Mr. Romo's eligibility. Accordingly, the judgment of the superior court upholding the agency decision is affirmed.

NOYES and GARBARINO, JJ., concur.