84 P.3d 482

**Charles SMITH, Plaintiff–Appellee,**

v.

**ARIZONA LONG TERM CARE SYSTEM, a component program of the Arizona Health Care Cost Containment System, Defendant–Appellant.**

No. 1 CA–CV 03–0262.

Court of Appeals of Arizona, Division 1, Department B.

Jan. 22, 2004.

Law Offices of Catherine Leas, P.C. By Catherine Leas, Sun City, Attorneys for Plaintiff–Appellee.

Johnston Law Offices, P.L.C. By Logan T. Johnston, Phoenix, Attorneys for Defendant–Appellant.

## OPINION

LANKFORD, Judge.

¶ 1 Defendant, Arizona Long Term Care System ("ALTCS"), appeals from the superior court's order affirming the Administrative Law Judge's ("ALJ's") recommended decision and vacating the Arizona Health Care Cost Containment System ("AHCCCS") Director's decision. ALTCS argues that the superior court erred when (1) it applied an incorrect standard of review by failing to give deference to the expertise of the Director, (2) it misconstrued federal law as to Plaintiff's eligibility for ALTCS, and (3) it erroneously decided that the Director's decision was arbitrary and capricious.

¶ 2 The dispositive issue is whether liability insurance proceeds as yet unpaid should be considered resources available to Plaintiff as of the date of his accident. The Director correctly decided that insurance proceeds could not be counted. Accordingly, we reverse the superior court's order vacating the Director's decision.

¶ 3 The basic facts are these. On April 6, 2000, Plaintiff suffered severe injuries as a

result of a motorcycle accident. The driver of the other vehicle admitted fault. The at-fault driver lacked liability insurance. However, Plaintiff and his Wife had two insurance policies, one issued by Dairyland Insurance and the other by Atlantic Casualty. The Dairyland policy provided a maximum of $100,000 coverage in the event of a collision with an uninsured motorist. The Atlantic policy provided an additional $25,000 in underinsured coverage.

¶ 4 The insurance companies eventually agreed to pay the maximum coverage amounts to the marital community of Plaintiff and his Wife. Dairyland Insurance paid $50,000 in July 2000 and paid $50,000 in August 2000. Atlantic Casualty paid the marital community its coverage limit of $25,000 in December 2000.

¶ 5 Due to his injuries, Plaintiff has been institutionalized since the accident. On Plaintiff's behalf, Wife applied for ALTCS benefits in February 2001. Wife then requested a resource assessment, which is the process by which ALTCS determines how much the applicant's spouse is entitled to exempt from being counted at the time eligibility is determined. This eligibility figure is called the Community Spouse Resource Deduction ("CSRD"). The resource valuation date for the exemption was April 6, 2000, the date of the accident.

¶ 6 According to ALTCS eligibility rules, the exempt property is equal to one-half of the otherwise included resources of both spouses as of the applicant's spouse first continuous period of institutionalization. The exemption cannot exceed $87,000. In February 2001, ALTCS issued an assessment which set the couple's resources as of April 6, 2000 at $108,421.98 and the exemption at $54,210.99. ALTCS did not consider any portion of the $125,000 received from the insurance companies as resources.

¶ 7 To qualify for the program, Plaintiff had to "spend down" all other assets to $2,000. In May, 2001, the Plaintiff's initial application was denied, because as of February, 2001, the Plaintiff had not yet spent down to the $2,000 limit. The subsequently received insurance proceeds were only counted as income when received and also had to be spent down to reach the eligibility limit.

¶ 8 Several months after the initial application, another application was submitted and approved, making Plaintiff eligible for ALTCS benefits as of May 2001. However, Wife timely appealed the earlier denial of her application for benefits and the calculation of the exemption. Wife contended that the insurance proceeds should have been included in the couple's resources as of April 6, 2000 for purposes of her initial application. This would have permitted her to retain the maximum allowable exemption of $87,000.

¶ 9 Wife argued that if the exemption had been correctly calculated as $87,000, Plaintiff would have been eligible for the benefits as of February instead of May.[1] Wife contended that as of the accident date (April 6, 2000, the date ALTCS used to assess the community's resources), she and Plaintiff had a legal right to receive $125,000 in insurance payments based on the accident and severity of the injuries, even if the insurance companies would not pay until a later date. She further argued that ALTCS routinely considers similar types of illiquid resources to be countable.

¶ 10 Following a hearing, the ALJ issued a decision and a recommended order in Plaintiff's favor. The ALJ found that Wife had proved the severity of Plaintiff's injuries, the fact that the at-fault driver was uninsured and found that the insurance proceeds were measurable and certain as of April 6, 2000, even if not received until a later date.

¶ 11 The Director of AHCCCS accepted the ALJ's findings of fact as to the circumstances of the accident, the fault of the other driver, the severity of Plaintiff's injuries and the existence of insurance coverage. However, the Director disagreed with the ALJ's finding that the insurance proceeds were certain and measurable as of April 6, 2000.

¶ 12 Plaintiff timely appealed the Director's decision to the superior court. The court vacated the Director's ruling and af-

---

1. Because the exemption is equal to one-half the countable resources as of April 6, 2000, but cannot be higher than $87,000, even if only the primary uninsured policy of $100,000 was counted, it would have been sufficient to achieve the maximum CSRD.

firmed the ALJ's recommended decision. Defendant timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–901 (2003).

¶ 13 We first address the argument that the superior court applied an inappropriate standard of review and thereby failed to give proper deference to the Director's decision. Defendant argues that the correct standard of review is whether the Director's decision was supported by substantial evidence, not whether substantial evidence supported the ALJ's decision.

¶ 14 In an appeal of an administrative board's decision pursuant to the Administrative Review Act, the superior court determines whether the administrative action was either illegal, arbitrary, capricious, or was an abuse of discretion. *Ethridge v. Ariz. St. Bd. of Nursing,* 165 Ariz. 97, 100, 796 P.2d 899, 902 (App.1989); *Berenter v. Gallinger,* 173 Ariz. 75, 77, 839 P.2d 1120, 1122 (App.1992). The trial court cannot re-weigh the evidence and substitute the court's findings for that of the agency. *Plowman v. Ariz. St. Liquor Bd.,* 152 Ariz. 331, 335, 732 P.2d 222, 226 (App.1986). In reviewing factual determinations, the court determines only whether there is substantial evidence to support the administrative decision. *Woerth v. City of Flagstaff,* 167 Ariz. 412, 417, 808 P.2d 297, 302 (App.1990). A decision supported by substantial evidence may not be set aside as being arbitrary and capricious. *Id.* The court has authority to make its own rulings on questions of law. *Bucciarelli v. Ariz. Dep't of Transp.,* 166 Ariz. 67, 68, 800 P.2d 54, 55 (App.1990).

¶ 15 The Director's decision is the final administrative decision entitled to deference. Under A.R.S. § 41–1092.08(B) (2003), an agency head, executive director, board or commission may review the ALJ's decision and accept, reject or modify it. The agency head need only set out a written justification setting forth his or her reasons. *Id.* That decision is the final administrative decision. *Id.* at (F). Defendant is correct that the superior court should have determined whether the Director's decision was supported by substantial evidence, not whether

the ALJ's decision was supported by substantial evidence.

¶ 16 The court did not err in this way, however. The superior court's order outlined the appropriate standard of review for administrative decisions. Admittedly, the court also stated that "there is substantial evidence to support the factual determinations of the [ALJ]." However, it ultimately stated and applied the appropriate standard of review: whether the Director abused his discretion by deciding that the insurance proceeds obtained as a result of the insurance policies were not definite.

¶ 17 The superior court reviewed the Director's decision. The court explained why it had determined that the Director's decision was erroneous. The order stated: (1) The policy and purpose of Medicaid and ALTCS supports the ALJ's decision that insurance proceeds are countable resources; (2) The Director was incorrect not to count insurance proceeds in the resource assessment at the time of the accident simply because the federal regulations do not include such proceeds in the definition of liquid resources; (3) The ALJ's findings were based on all the evidence; (4) The Director incorrectly decided that one need possess the proceeds as of the date of the accident to be considered; and (5) The Director's decision penalizes those who obtain insurance. Thus, even though the court found substantial evidence to support the ALJ's determinations, it then applied the correct standard in reviewing the Director's decision. Moreover, the dispositive question is whether the insurance proceeds are includable. There are no factual disputes and this question is one of law subject to de novo review, not deferential review. *Bucciarelli,* 166 Ariz. at 68, 800 P.2d at 55.

¶ 18 We turn now to the ultimate issue, whether the insurance proceeds should be counted as an available resource as of April 6, 2000. ALTCS argues that the superior court disregarded federal law. Plaintiff contends that because ALTCS did not count the insurance proceeds as a resource as of the date of the accident, Plaintiff was needlessly forced to "spend down" a substantial sum of money on care. Additionally, had the insurance proceeds been included in the re-

source assessment, Wife would have been able to retain more assets through the exemption.

■ ¶ 19 On an appeal involving an administrative decision, we review the superior court's judgment to determine whether the record contains evidence to support the judgment. *Ethridge,* 165 Ariz. at 100, 796 P.2d at 902. In doing so, we reach the same underlying issues as the superior court: whether the administrative action was illegal, arbitrary, capricious or involved an abuse of discretion. *Havasu Heights v. Desert Valley Wood,* 167 Ariz. 383, 386, 807 P.2d 1119, 1122 (App.1990). When the issue involves an interpretation of law by the administrative agency, this Court is free to reach its own legal conclusion. *Eshelman v. Blubaum,* 114 Ariz. 376, 378, 560 P.2d 1283, 1285 (App. 1977).

¶ 20 The case before us is perhaps atypical of most medical benefits appeals which come before this Court. Applicants frequently do not want a resource counted so as to be eligible for long term care. *E.g., Romo v. Kirschner,* 181 Ariz. 239, 889 P.2d 32 (App. 1995). However, regardless of whether an applicant wants the resource to be counted or to be exempt from the resource assessment, the eligibility factors are the same.

¶ 21 Arizona is bound by federal eligibility factors. *See* 42 U.S.C. § 1396a(a)(17)(B); A.R.S. §§ 36–2931(5)(d) (2003) and 36–2934(A)(1) (2003).[2] The latter provides:

A person meets the eligibility criteria of this article and the § 1115 [42 U.S.C. § 1315] waiver if the person satisfies one of the following: (1) Is eligible pursuant to § 36–2901, paragraph 6, subdivision (a), item (i) or (ii) on the date of application for medical assistance under this article and meets the resource requirements prescribed by federal law.

As it must, Arizona follows federal resource standards for the determination of eligibility based only on "such income and resources as are ... available to the applicant or recipient...." 42 U.S.C. § 1396a(a)(17)(B). The

applicable resource eligibility standard is 20 C.F.R. § 416.1201, which states at subparagraph (a)(1):

If the individual has the right, authority or power to liquidate the property or his share of the property, it is considered a resource. If a property right cannot be liquidated, the property will not be considered a resource of the individual (or spouse).

The regulation then defines liquid and illiquid resources, but both are examples of resources available to the applicant:

(b) Liquid resources. Liquid resources are cash or other property which can be converted to cash within twenty days, excluding certain nonwork days as explained in § 416.120(d). Examples of resources that are ordinarily liquid are stocks, bonds, mutual fund shares, promissory notes, mortgages, life insurance policies, financial institution accounts (including savings, checking, and time deposits, also known as certificates of deposit) and similar items. Liquid resources, other than cash, are evaluated according to the individual's equity in the resources.

(c) Nonliquid resources are property which is not cash and which cannot be converted to cash within 20 days excluding certain nonwork days as explained in § 416.120(d). Examples of resources that are ordinarily nonliquid are loan agreements, household goods, automobiles, trucks, tractors, boats, machinery, livestock, buildings and land. Nonliquid resources are evaluated according to their equity value except as otherwise provided.

20 C.F.R. § 416.1201(b) and (c).

¶ 22 Both liquid and illiquid resources are counted in the resource assessment. 20 C.F.R. § 416.1201(a)(1). Plaintiff argues that there is a significant difference between whether a resource is considered a liquid or illiquid resource. However, the determining factor is the existence of the legal right to liquidate or control either the liquid or illi-

---

**2.** Arizona has elected to participate in the federal Medicaid program by establishing programs such as ALTCS. A.R.S. § 36–2901 (2003). As a condition of receiving federal funds, Arizona must use federal eligibility standards. *See* 42 U.S.C. § 1396a(a)(17)(B).

quid resource.[3] Thus, whether Plaintiff had the authority to "liquidate" the insurance proceeds as of the assessment date is dispositive.

¶ 23 The insurance proceeds should not have been counted as an available resource as of April 6, 2000 for a number of reasons. First, the statutory purpose demonstrates that the Director's decision was correct. The purpose behind the statutory and regulatory scheme is to ensure that, when determining eligibility, any assets and other funds readily available to that person for support and maintenance should be used for those purposes before the state provides financial support. *See, e.g., Romo*, 181 Ariz. at 242, 889 P.2d at 35 (Congress intended to restrict eligibility to those lacking the resources to pay for their own care and to prevent those seeking subsidized benefits from retaining assets which should be used to pay for such care); *Whaley v. Schweiker*, 663 F.2d 871 (9th Cir.1981)(the purpose of assistance is to assure recipient's income is maintained at the minimum level necessary for the recipient to subsist); H.R.Rep. No. 231, 92nd Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.C.C.A.N. 4898, 5132–33 (purposes of providing SSI assistance is to complement other sources of income where the sources fail to keep the individual from falling below poverty line). The Director's decision not to include insurance proceeds was consistent with the statutory purpose because Plaintiff could not use the insurance proceeds on April 6, 2000 for his own medical care.

¶ 24 Second, the complete definition of "resource" establishes that the insurance proceeds should not have been counted as of April 6. 20 C.F.R. § 416.1201(a) defines "resources" as "cash or other liquid assets or any real or personal property that an individual ... owns and could convert to cash to be used for his or her support and maintenance." Section 416.1201(a)(1) further provides that "[i]f a property right cannot be liquidated, the property will not be considered as a resource of the individual (or spouse)." Further, net income available for current use and currently available resources shall be considered; income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance. 45 C.F.R. § 233.20(a)(3)(ii)(D)(1980). Thus, the primary question is whether Plaintiff's future insurance payments were available to convert to cash for use as support and maintenance.

¶ 25 The insurance proceeds were not available to convert to cash. Plaintiff lacked the power to convert the insurance proceeds to cash as of April 6, 2000. First, the insurance proceeds could not have been sold or assigned. *See, e.g., Lingel v. Olbin*, 198 Ariz. 249, 8 P.3d 1163 (App.2000) (prohibition against assignment of personal injury claims is based on public policy); *see also Allstate Ins. Co. v. Druke*, 118 Ariz. 301, 576 P.2d 489 (1978) (Arizona follows the common law rule that, absent a statute, an assignment of a cause of action for personal injuries against a third-party tort-feasor is void and unenforceable). This rule applies with equal force to insurance proceeds stemming from a personal injury claim. *See Karp v. Speizer*, 132 Ariz. 599, 601, 647 P.2d 1197, 1199 (App.1982)(extending rule prohibiting the assigning of personal injury claims to include anticipated insurance proceeds from such an action).

¶ 26 Second, Plaintiff has not shown that he had a right to then force payment of a specific sum. The insurance proceeds surely had neither been paid nor yet agreed to be paid by the insurers as of the assessment date because that was the date of the accident. The insurance companies did not pay until July, August and December. The unpaid proceeds were not a "resource" that could be immediately converted to cash.

---

**3.** Both liquid and illiquid resources are counted in the resource assessment. If a resource cannot be converted to cash within twenty days, it is considered an illiquid resource, thus entitling the applicant to an extended period of time to dispose of or "spend down" their resources so as to be eligible for government aid. 20 C.F.R. § 416.1242(a) and (b). The applicant must agree in writing to dispose of the property and must take steps to do so. *Id.; see also* 20 C.F.R. § 416.1240(a)(2)(i). *See, e.g., Woods v. Shalala,* 884 F.Supp. 156 (Dist.N.J.1995)(explaining operation of these regulations as applied to cash surrender value of life insurance policies).

¶ 27 The manner in which insurance contracts operate supports the Director's findings. Insurers ordinarily have no duty to pay immediately when an accident occurs. The victim must make a claim against the policy. In the case of underinsured or uninsured coverage, the loss must be determined to be uninsured or to exceed available liability coverage. The policy owner's degree of fault must be assessed. The insurer has a reasonable opportunity to investigate and determine whether and in what amount the claim should be paid. Only when these conditions are met are insurers legally obligated to pay. Thus, the insurance proceeds were not an available resource as of the date of the accident.

¶ 28 Finally, the Ninth Circuit defines an "available" resource consistently with our decision. The Ninth Circuit Court of Appeals stated:

> The language of the regulation was clarified so that the reference regarding consideration of a legal interest income or resources is a reference to a liquidated sum and not to an uncollected judgment such as a child support order which has not been paid. The regulations were revised to recognize the distinction which exists between that which is actually available and those resources which exist only in the form of unliquidated causes of action.

*Schrader v. Idaho Dep't of Health and Welfare*, 768 F.2d 1107, 1112 (9th Cir.1985), citing 40 Fed.Reg. 30,694 (July 24, 1975). Similarly, as of April 6, no insurance money had been paid and Plaintiff had at most an unliquidated cause of action.

¶ 29 Plaintiff contends that because the insurance proceeds are like loan agreements, they should be counted as an available illiquid resource, citing 20 C.F.R. § 416.1201. However, the differences between a loan agreement and pending insurance proceeds are significant. Had Plaintiff owned an account receivable such as a loan agreement as of April 6, 2000, he could have assigned the asset on that date. Further, the ALTCS could determine the equity value of such an asset without speculating. Moreover, on April 6, there was no definite date for payment of the insurance funds. As of April 6, the insurance proceeds did not yet exist and could not be liquidated.

¶ 30 This decision is consistent with our decision in *Romo*, 181 Ariz. 239, 889 P.2d 32, and other cases in which an applicant wants the resource to be exempt from the resource assessment. The dispositive issue in *Romo* was whether a $150,000 trust fund was an "available" resource which disqualified the trust beneficiary from indigent health care. 181 Ariz. at 240, 889 P.2d at 33. We held that the trust was an available resource. *Id.* In all cases, long-term assistance requires all applicants to expend personal assets before public assistance is granted. *Id.* at 242, 889 P.2d at 35. Romo had immediate access to the trust funds and to hold them exempt from the resource assessment would not have relieved him of the obligation to expend those funds before seeking government assistance, thus straining limited resources for indigent health care. *Id.; see also Forsyth v. Rowe*, 226 Conn. 818, 828, 629 A.2d 379, 385 (1993) ("The [M]edicaid program would be at fiscal risk if individuals were permitted to preserve assets for their heirs while receiving [M]edicaid benefits from the state."). Our holding in *Romo* is consistent with this decision in that whether an applicant seeks the resource to be counted or exempt from the resource assessment, the rules are the same; the key determination is whether an applicant has immediate access to the resource to use for personal medical assistance before seeking governmental assistance.

¶ 31 Based on the foregoing, the superior court's decision rested on an error of law. The court erred in determining that the insurance proceeds were resources available to Plaintiff to convert to cash. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

CONCURRING: DANIEL A. BARKER and DONN KESSLER, Judges.