NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-40                                        Appeals Court

SHONNA CALHOUN & others[1]  vs.  JASON M. RAWLINS, special
representative,[2] & others.[3]

No. 17-P-40.

Plymouth.      February 1, 2018. - June 27, 2018.

Present:  Trainor, Blake, & Lemire, JJ.


Trust, Self-settled trust, Spendthrift provision, Irrevocable
     trust, Claim of creditor.  Divorce and Separation,
     Separation agreement.  Guardian, Incompetent person.



Civil action commenced in the Superior Court Department on
November 7, 2014.

The case was heard by Robert C. Cosgrove, J., on motions
for summary judgment, and entry of separate and final judgment
was ordered by him.

_____

[1] William Calhoun, Jr., and Timothy Pink, Jr., by his father
and next friend, Timothy Pink.

[2] Of the estate of Brian K. McInerney.

[3] KeyBank National Association, trustee of the Brian K.
McInerney Irrevocable Trust; Jean E. McInerney, trustee of the
Brian K. McInerney Irrevocable Trust.

Richard B. Reiling (Richard C. Woods, Jr., also present) for the plaintiffs.

Stephen M. LaRose (Charles Dell'Anno & Edward M. Joyce, Jr., also present) for the defendants.

BLAKE, J.  At issue in this case is whether the assets of an irrevocable spendthrift trust, established in 2007 on behalf of a disabled husband upon divorce from his wife, are available to satisfy any damages awarded in a subsequent personal injury action against the former husband.  Resolution of the issue requires us to consider whether the trust was self-settled.  We conclude that successful plaintiffs in this action may recover damages from the trust.

Background.  A.  The Probate and Family Court proceedings. Before the motor vehicle accident at issue in this case, Brian K. McInerney was involved in a motor vehicle accident in 2001, in which he sustained a severe traumatic brain injury.  In September of 2004, a judge of the Probate and Family Court

appointed coguardians for him due to his inability to make medical and other important decisions.[4,5]

Having married in 1987, McInerney and his former wife, Susan J. Stone, separated in January of 2004. McInerney filed a complaint for divorce on March 8, 2005, requesting an equitable division of the marital assets under G. L. c. 208, § 34.[6] Throughout the marriage, Stone held significant assets in her own name, including accounts at KeyBank National Association (KeyBank), at least some of which derived from a trust created for Stone's benefit by her grandfather. McInerney worked for only one year during the marriage; Stone worked as an artist and then as a mental health counselor, making a modest salary. During the marriage, the family was supported primarily, if not exclusively, by Stone's income from her employment and her assets.

---

[4] The medical certificate filed in support of the guardianship petition stated that McInerney was unable to make or to communicate informed decisions due to physical incapacity. Specifically, he had residual cognitive impairment in attention, memory, and executive functioning and was unable to make complex decisions involving legal matters.

[5] Jean E. McInerney, appointed as coguardian, subsequently was appointed sole guardian.

[6] Three children were born of the marriage. Elise was born in 1989 and Dru was born in 1992. The couple's youngest child, Lia, died from injuries sustained in the 2001 motor vehicle accident. She was two years old at that time.

McInerney, by his guardian, and Stone executed a separation agreement, which was incorporated into the judgment of divorce nisi. The separation agreement was later amended by stipulation and approved by a judge of the Probate and Family Court. The amended separation agreement (ASA), dated January 26, 2007, settled McInerney's and Stone's rights and obligations to one another upon dissolution of their marriage.[7] In pertinent part, the ASA provided that Stone would transfer approximately thirty-five percent of the funds in her KeyBank accounts to a spendthrift trust to be created for McInerney.[8] In addition, the

---

[7] The ASA states, "The Husband and the Wife desire by this Agreement to confirm their separation, . . . and to settle between themselves all questions pertaining to their respective property and estate rights, the support and maintenance of the Husband and the Wife, and all other rights and obligations arising from their marital relationship." They agreed that the provisions set forth in the ASA were in full satisfaction and discharge of, among other things, "all property claims, past and present, which either may have against the other party, including all such rights as either party may have, or claim to have, to property under the terms and provisions of [G. L. c. 208, § 34]." They also agreed that they would not seek from any court "any order or judgment" that would "vary or increase the equitable division of property or any other obligations of the other party as set forth in the" ASA.

[8] Specifically, the ASA provided, "In light of the circumstances of the Husband . . . , it is an essential condition of the assignment and transfer of any and all assets from the Wife to the Husband under this Agreement that said assets be transferred to a trust conforming to the requirements set forth in Article III, subsection C, below and to be approved by the Court for the benefit of Husband, as well as [his children, Elise and Dru,] as the contingent beneficiaries. No such assets shall be transferred unless such condition is met." Article III(C)(4) expressly provides that the trust shall

ASA contained provisions regarding the marital home, a vacation home in Maine, the purchase of a home in Plymouth for McInerney, and other assets, including assets inherited by Stone.  The ASA provided that the division of assets would survive entry of the judgment of divorce nisi and would have independent legal significance.  By approving the ASA and incorporating it into the judgment of divorce nisi, the Probate and Family Court judge found that the terms were fair and reasonable.

B.  Creation of the Brian K. McInerney Irrevocable Trust.

The Brian K. McInerney Irrevocable Trust (trust) was created on March 23, 2007, and, though irrevocable, the trustees were given complete discretion to distribute as much of the income and principal of the assets in the trust as they felt were necessary to meet the reasonable needs of McInerney.  The terms of the trust identified Stone as the settlor, McInerney as the beneficiary, and their children, Elise and Dru, as the remainder beneficiaries.  The trustees at that time were McInerney's sister and guardian (Jean E. McInerney[9]), and Bank of America as the corporate trustee.  The trust provides that the "interest of

_____

contain spendthrift provisions "to protect the trust from any creditors of the Husband so that the trust is not liable to pay any of the creditors of the Husband."

[9] Hereinafter, we will refer to McInerney's sister as "Jean" to avoid confusion.

any beneficiary created herein, either as to income or principal, shall not be alienated, anticipated or in any other manner assigned by such beneficiary and shall not be subject to legal process, bankruptcy proceedings, or the interference or control of creditors."

Pursuant to the ASA, on May 7, 2007, Stone transferred $3,538,402.34 of stocks and bonds to the trust. She also transferred the Plymouth home valued at $538,400 into the trust. In addition, McInerney transferred assets standing in his own name, totaling more than $120,000, into the trust.

C. The motor vehicle accident at issue. On April 30, 2014, plaintiffs Shonna Calhoun and her minor child, Timothy Pink, Jr., were involved in a motor vehicle accident with McInerney. It is alleged that McInerney was traveling seventy-six miles per hour in a thirty-five miles per hour zone, crossed the yellow line to pass a vehicle, and collided head on with a vehicle being driven by Calhoun. The crash caused serious injuries to Calhoun and her minor child, and McInerney died from his injuries.

The plaintiffs[10] commenced this action in Superior Court seeking damages for McInerney's negligence and a judgment

---

[10] William Calhoun, Jr., brought a loss of consortium claim regarding his wife.

declaring that the assets of the trust are available to them to satisfy any damages award. The parties filed cross motions for summary judgment solely on the issue whether the trust's assets are available to the plaintiffs. A judge (motion judge) determined that only the assets that McInerney contributed to the trust are reachable. The motion judge found that the assets contributed by Stone are not reachable because Stone was the sole owner of the assets until they entered the trust and McInerney never had any prior legal or equitable interest in them. A separate and final judgment entered on the declaratory judgment claim. See Mass.R.Civ.P. 54(b), 365 Mass. 820 (1974). The plaintiffs appeal.

Discussion. A. Spendthrift trusts. When faced with the question whether creditors may reach the assets of spendthrift trusts, our cases distinguish between spendthrift trusts that are created by third parties, such as parents, and spendthrift trusts that are self-settled by an individual who is both settlor and beneficiary. It has long been the law in this Commonwealth that a trust created by a third-party settlor may protect a beneficiary's interest in the trust from creditors through spendthrift provisions. See Broadway Natl. Bank v. Adams, 133 Mass. 170, 173-174 (1882); Pacific Natl. Bank v. Windram, 133 Mass. 175, 176 (1882). Even in the face of public policy arguments favoring access, a third-party settlor's intent

to deny creditors of a beneficiary recovery against trust assets has been enforced. Pemberton v. Pemberton, 9 Mass. App. Ct. 9, 20 (1980). The theory behind the enforcement of these spendthrift trusts is that the settlor of a trust is the absolute owner of his property and, in giving a gift, has "the entire right to dispose of it, either by an absolute gift . . . or by a gift with such restrictions or limitations, not repugnant to law, as he [sees] fit to impose." Adams, supra at 173.

Self-settled trusts, where the beneficiary is also the settlor, however, cannot be used to protect one's assets from creditors. "The established policy of this Commonwealth long has been that a settlor cannot place property in trust for his own benefit and keep it beyond the reach of creditors." Ware v. Gulda, 331 Mass. 68, 70 (1954), quoting from Merchants Natl. Bank v. Morrissey, 329 Mass. 601, 605 (1953). "To permit a man . . . to attach to a valuable interest in property retained by himself the quality of inalienability and of exemption from his debts, seems to us to be going further than a sound public policy will justify." Windram, 133 Mass. at 176-177. Thus, "[w]hen a person creates for his own benefit a trust for support or a discretionary trust, his creditors can reach the maximum amount which the trustee, under the terms of the trust, could pay to him or apply for his benefit." State St. Bank & Trust

Co. v. Reiser, 7 Mass. App. Ct. 633, 636 (1979). "This is so even if the trust contains spendthrift provisions." Ibid. See Ware, supra. This concept also has been codified in the Massachusetts Uniform Trust Code. General Laws c. 203E, § 505(a)(2), inserted by St. 2012, c. 140, § 56, provides that notwithstanding the presence of a spendthrift provision, "[w]ith respect to an irrevocable trust, a creditor or assignee of the settlor may reach the maximum amount that can be distributed to or for the settlor's benefit."[11] See Restatement (Second) of Trusts § 156(2) (1959) ("Where a person creates for his own benefit a trust for support or a discretionary trust, his transferee or creditors can reach the maximum amount which the trustee under the terms of the trust could pay to him or apply for his benefit"). See also Restatement (Third) of Trusts § 58 (2003).

---

[11] There is some discussion in Reiser, supra at 637, pointing to the settlor's retention of a power of appointment as part of the reason creditors may reach the assets of the trust. When the settlor retains some control over the disbursement of the assets of an irrevocable trust, creditors may reach the maximum amount of the funds that can be distributed to the settlor. See G. L. c. 203E, § 505(a)(2); Reiser, supra. "The Eleventh Circuit [has] stated that '[t]he issue of self-settlement is separate from the issue of control, and either can serve as an independent ground for invalidating a spendthrift provision.'" In re Raymond, 529 B.R. 455, 479 (Bankr. D. Mass. 2015), quoting from In re Brown, 303 F.3d 1261, 1267 n.9 (11th Cir. 2002).

In <u>Cohen</u> v. <u>Commissioner of the Div. of Med. Assistance</u>, 423 Mass. 399, 414 (1996), cert. denied sub nom. <u>Kokoska</u> v. <u>Bullen</u>, 519 U.S. 1057 (1997), the Supreme Judicial Court described self-settled spendthrift trusts as created "for the purpose of having your cake and eating it too."  "Under such a trust, a grantor puts his assets in a trust of which he is the beneficiary, giving his trustee discretion to pay out monies to gratify his needs but limiting that discretion so that the trustee may not pay the grantor's debts."  <u>Ibid</u>.  The court noted that this jurisdiction and others have long followed the Restatement principle for self-settled trusts.  <u>Ibid</u>.

On appeal, KeyBank and Jean "do not quibble with this well-established principle" applicable to self-settled trusts, and even agree that the motion judge correctly applied G. L. c. 203E, § 505(a)(2), in concluding that the funds contributed to the trust by McInerney from his own accounts are available to the plaintiffs.  KeyBank and Jean contend only that the rule does not apply to the trust assets supplied by Stone.  Thus, determination of whether the trust is self-settled or settled by Stone is at the heart of this dispute.

B.  <u>Self-settled</u>.  In order for creditors to reach trust assets where a person created a trust for support or a discretionary trust for his own benefit, it is not necessary that the beneficiary shall have himself conveyed the property

held in trust. Restatement (Third) of Trusts § 58 comment f (2003). It is enough that the beneficiary provide consideration. Ibid. "A trust is established by the person who provides the consideration for the trust even though in form it is created by someone else." Romo v. Kirschner, 181 Ariz. 239, 241-242 (Ct. App. 1995), quoting from Forsyth v. Rowe, 226 Conn. 818, 826 (1993). "[I]t is the beneficiary's entitlement to the settlement proceeds, not whether they were literally paid into his hands, that indicates whether the beneficiary funded the trust." Id. at 242.

Whether the trust was self-settled by McInerney for the purpose of the plaintiffs' claims regarding the trust property requires us to look beyond the labels adopted in the trust instrument and the ASA. Cf. In re Village Green Realty Trust, 113 B.R. 105, 114 (Bankr. D. Mass. 1990), quoting from In re Dolton Lodge Trust No. 35188, 22 B.R. 918, 925 (Bankr. N.D. Ill. 1982) (In determining whether trust is eligible for bankruptcy even though labeled nominee trust, focus is not on label but "on what the debtor actually is and the purpose it has been created to carry out"). Thus, the terms identifying the settlor as Stone or the accounts held by Stone as her individual assets rather than as marital assets were not binding on the motion judge or on the plaintiffs for determining whether the plaintiffs may reach the trust. It would be anomalous indeed if

a settlor could avoid the well-settled principle that one cannot avoid creditors through a self-settled trust by the simple expedient of identifying another person in the trust instrument as the settlor.  Rather, in determining whether the trust was self-settled, we look to the facts surrounding the creation of the trust.

Here, the proper focus is on the reason Stone funded the trust.  The motion judge's focus on the source of the funds was misplaced because it ignored the fact that assets previously held in Stone's name were transferred to the trust in settlement of her obligations to McInerney upon dissolution of the marriage, not as a gift.  An agreement that settles the rights of divorcing spouses with regard to property, maintenance, and support is based on valuable consideration.  See Handrahan v. Moore, 332 Mass. 300, 303 (1955).  McInerney's agreement to settle his rights and obligations pursuant to the dissolution of the marriage was the consideration for the creation of the trust.  Stone was not gifting her money to McInerney; she was satisfying her obligations arising from the dissolution of the marriage.  Accordingly, McInerney had a legal right to the monies that funded the trust.  That he agreed through his guardian to have the funds deposited into the trust does not alter the fact that these funds represented the agreed-upon equitable division due him incident to the divorce.

Even though there are no Massachusetts cases directly on point, our reasoning finds support in the case law. In Cohen, 423 Mass. at 422-423, a beneficiary of a trust argued that, for the purpose of qualifying for Medicaid, she was not the settlor of a trust but, rather, her conservator established the trust with proceeds of a medical malpractice settlement and pursuant to a decree of the Probate and Family Court. In rejecting that argument, the court cited cases from other jurisdictions where trusts were considered self-funded by beneficiaries even though they were created by conservators and guardians of the beneficiaries, sometimes with court approval, and funded with settlement proceeds from the beneficiaries' personal injury actions and workers' compensation claims. See id. at 422, and cases cited. The court reasoned that "[a] conservator, like a guardian, has only the care and management of the ward's estate, and title to it . . . never vests in him but remains in the ward." Id. at 423, quoting from Minnehan v. Minnehan, 336 Mass. 668, 670 (1958).

In In re Tosi, 383 B.R. 1, 4 (Bankr. D. Mass. 2008), the debtor's portion of his father's estate was placed into a discretionary trust. The debtor argued that the trust was not self-settled because the trust property passed directly from the executors to the trustees of the trust. Id. at 13. The court rejected the argument because the monies that funded the trust

"were monies that [the debtor] was legally entitled to receive and did receive from the settlement of his father's estate.  In other words, there can be no dispute that the monies that funded [the trust] were attributable to the [d]ebtor's share of his father's estate."  Ibid.

We see no meaningful distinction between the facts considered in Cohen, those considered in In re Tosi, and the facts here.  McInerney's legal and equitable rights in the settlement of the parties' rights and obligations upon dissolution of the marriage was the impetus behind the creation of the trust and, therefore, he properly is considered the settlor.  Compare Miller v. Ibarra, 746 F. Supp. 19, 30 (D. Colo. 1990) (trust created by courts for incompetent person pursuant to State statute not self-settled).  That the monies that funded the trust came from Stone's individual accounts is not controlling where she contributed the funds in satisfaction of her obligations related to the dissolution of the marriage.

We reject the premise adopted by the motion judge that because certain accounts that funded the trust were in Stone's name during the marriage and may have derived from trusts of which she was the sole beneficiary, they could not be considered to be part of the marital estate.[12]  "Inherited assets, including

_____

[12] General Laws c. 203E, § 34 "is intended 'to provide a mechanism whereby no matter how the property has been acquired

an interest in trust property established by one spouse's parents," or, as in this case, a grandparent, "may comprise part of a marital estate for purposes of possible division under G. L. c. 208, § 34." Ruml v. Ruml, 50 Mass. App. Ct. 500, 511 (2000). While the parties chose to define in the ASA certain bank accounts held solely by Stone as Stone's assets,[13] there is nothing in the record to suggest that accounts held in Stone's name were not available to satisfy Stone's obligations to McInerney at the time of the divorce. To the contrary, the parties mutually agreed that McInerney was entitled to thirty-five percent of the funds in these accounts to be paid into the trust. Accordingly, the parties, when they executed the ASA, and the Probate and Family Court judge when he approved it, determined that the assets were properly divided between the parties.[14] The suggestion that the trust could not have been

---

or how it is held, the court can distribute it between the parties in such a way as to provide for a balanced disposition and economic justice.'" Denninger v. Denninger, 34 Mass. App. Ct. 429, 434-435 (1993), quoting from Hay v. Cloutier, 389 Mass. 248, 254 (1983).

[13] As required by rule 401 of the Rules of the Probate Court (2012), Stone disclosed these assets on her financial statement filed in connection with the divorce proceedings.

[14] We have recognized the validity of such agreements, and have "encouraged divorcing parties to enter into written separation agreements," that "secure with finality the parties' respective rights and obligations concerning the division of marital assets, among other things, according to established contract principles." DeMarco v. DeMarco, 89 Mass. App. Ct.

self-settled because McInerney's name was not on the accounts during the marriage, particularly in these circumstances, is unavailing.

C. <u>Intention of the parties</u>. It appears to have been the intent of the parties to the ASA to create a valid spendthrift trust that would protect the trust's assets from McInerney's creditors.[15] As between the parties, the terms of the ASA are enforceable. The role of the Probate and Family Court judge in approving the ASA was to ensure it was free of fraud and coercion, and fair and reasonable in the circumstances. See <u>Dominick</u> v. <u>Dominick</u>, 18 Mass. App. Ct. 85, 91 (1984). While the ASA set forth the terms of the trust, including the

_____

618, 623 (2016), quoting from <u>Krapf</u> v. <u>Krapf</u>, 439 Mass. 97, 103 (2003). Indeed, "[t]he public policy of Massachusetts 'favors settlement of property disputes resulting from a divorce through equitable, enforceable separation agreements, freely entered into by the parties.'" <u>Ratchford</u> v. <u>Ratchford</u>, 397 Mass. 114, 116 (1986), quoting from <u>Moore</u> v. <u>Moore</u>, 389 Mass. 21, 24 (1983). See <u>Pavluvcik</u> v. <u>Sullivan</u>, 22 Mass. App. Ct. 581, 584 (1986). "[A] separation agreement is a 'judicially sanctioned contract' that is valid and enforceable only if and as approved by the judge" upon a finding that the division of the marital estate is fair, reasonable, and equitable in the circumstances. <u>Krapf</u>, <u>supra</u> at 104, quoting from <u>Bell</u> v. <u>Bell</u>, 393 Mass. 20, 26 (1984), cert. denied, 470 U.S. 1027 (1985) (Abrams, J., dissenting).

[15] The parties to the ASA filed a joint motion to amend the prior separation agreement in order to clarify that the provision requiring McInerney's assets to be placed into a trust is an integral and essential part of the separation agreement and that an interpretation that the trust established for McInerney is self-settled would be contrary to the parties' intent.

spendthrift provision, there was no evidence that the Probate and Family Court judge was asked to decide whether the trust instrument would in fact protect McInerney's portion of the marital estate from creditors.

McInerney and Stone were free to settle the rights and obligations between them in an enforceable contract. However, by the terms agreed upon in the ASA, they were not free to except the trust from G. L. c. 203E, § 505(a)(2), with regard to a creditor's effort to reach the trust to satisfy any judgment against McInerney. If, as it would appear, their intent was to keep McInerney's funds out of the hands of his creditors, they could not do so by transferring his share of the marital estate into a spendthrift trust over which the trustees had discretion to pay to him both the principal and the interest of the trust during his lifetime. Cf. Guerriero v. Commissioner of the Div. of Med. Assistance, 433 Mass. 628, 633, 635 (2001). Here, the proper application of G. L. c. 203E, § 505(a)(2), allows the plaintiffs to access the trust in the circumstances presented.

Finally, we have considered whether McInerney's cognitive impairments, which caused him to be placed under guardianship, give him a special status in terms of self-settled spendthrift trusts that are approved by a judge in the course of approving a separation agreement. The parties have pointed us to no statute or common-law principle that confers such a status. Cases

considered in Cohen, too, involved trusts created by conservators and guardians for incompetent adults. In a case with remarkably similar facts insofar as a husband involved in a motor vehicle accident causing serious injuries placed proceeds of his personal injury action into a spendthrift trust, the Georgia Supreme Court said "no settlor, disabled or otherwise, should be permitted to put his own assets in a trust, of which he is the sole beneficiary, and shield those assets with a spendthrift clause, because to do so is 'merely shift[ing] the settlor's assets form one pocket to another, [in an attempt to avoid creditors].'" Speed v. Speed, 263 Ga. 166, 168 (1993), quoting from 76 Am. Jur. 2d 164, Trusts, § 129. In the absence of public policy or other argument to the contrary, we agree.

Conclusion. We conclude that the trust was self-settled. The funds transferred to the trust by Stone were transferred for the purpose of satisfying her obligations to McInerney related to the dissolution of the marriage. The principal and the interest of the trust were available to McInerney during his lifetime and the same amounts are available to the plaintiffs to satisfy any judgment in their personal injury action. See Reiser, 7 Mass. App. Ct. at 638-639. The judgment is reversed and a new judgment is to enter declaring that the plaintiffs may reach the assets of the Brian K. McInerney Irrevocable Trust.

So ordered.