NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13429

JANE K. FURNAS  vs.  CATHLEEN M. CIRONE, personal
representative.[1]


Hampden.     September 11, 2023. - November 21, 2023.

Present:  Budd, C.J., Gaziano, Lowy, Cypher, Kafker, Wendlandt,
& Georges, JJ.


Joint Tenants.  Real Property, Joint tenancy, Partition.
    Contempt.  Practice, Civil, Contempt, Motion to dismiss.
    Jurisdiction, Probate Court, Equitable.  Probate Court,
    Jurisdiction, General equity power.  Judgment, Enforcement.



     Petition for partition filed in the Hampden Division of the
Probate and Family Court Department on December 20, 2016.

     A complaint for contempt, filed on January 22, 2021, was
heard by Barbara M. Hyland, J.

     After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


     Talia K. Williams (Jesse W. Belcher-Timme also present) for
the petitioner.
     Mark J. Esposito for the respondent.



_____

     [1] Of the estate of Anthony P. Cirone.

CYPHER, J.  Anthony P. Cirone and Jane K. Furnas owned a property as joint tenants with rights of survivorship. Following proceedings to partition the property, they settled on an agreement whereby Anthony[2] would make monthly payments to Furnas, who would keep the mortgage current and either refinance or list the property for sale.  After a decree was entered incorporating their agreement, Anthony passed away.  His daughter, acting as personal representative of his estate, sought to hold Furnas in contempt for failing either to refinance or to list the property for sale.  A judge found Furnas in civil contempt.

This case asks us to determine whether Anthony's and Furnas's joint tenancy was severed by the agreement, thereby terminating Furnas's right of survivorship.  We also are asked to determine whether the agreement was enforceable by the probate court, even if the joint tenancy was not severed.  We conclude both that the agreement severed the joint tenancy and that the probate court had jurisdiction to enforce the agreement.  We therefore affirm the judgment of civil contempt.

1.  Background.  The following facts were found by the motion judge after an evidentiary hearing and generally are undisputed.

---

[2] Because Anthony P. Cirone and Cathleen M. Cirone share the same surname, we use their first names for clarity.

Anthony and Furnas owned a home in East Longmeadow (property) as joint tenants with rights of survivorship. In December 2016, Furnas filed a petition to partition the property pursuant to G. L. c. 241, § 1. On August 9, 2018, Anthony and Furnas presented a negotiated agreement to a judge of the probate court.

Under the agreement, Anthony would make monthly payments to Furnas in the amount of one-half of the mortgage and remove his personal belongings from the property. Furnas was obligated to keep the mortgage current and either (1) refinance the property and remove Anthony from the note and mortgage by September 1, 2020, or, alternatively, (2) list the property for sale by June 1, 2020, with the proceeds from the sale to be divided between the parties. The judge approved the parties' agreement, entering a decree that incorporated and merged the terms of the agreement. Neither party appealed from the decree.

Anthony made seven mortgage payments to Furnas before becoming medically incapacitated in February 2019. Thereafter, his daughter, Cathleen M. Cirone, was appointed as his conservator. Cathleen made an additional twelve payments before pausing payments temporarily to seek a forbearance on the mortgage. On June 4, 2020, Anthony died, and Cathleen was subsequently appointed as personal representative of his estate. In September 2020, Cathleen brought the payments to Furnas

current; however, Furnas did not cash the checks because she claimed that, on Anthony's death, she became the sole owner of the property by operation of law.

In January 2021, Cathleen filed a complaint for contempt against Furnas alleging that she had failed to comply with the terms of the decree. Furnas filed an answer, setting forth affirmative defenses challenging the validity of the agreement, and a purported counterclaim.[3] Furnas also filed a motion to dismiss the complaint, arguing that the decree did not sever the joint tenancy and, consequently, that Cathleen and the estate lacked standing to bring the complaint.

Following a contested hearing, the judge denied Furnas's motion to dismiss. An evidentiary hearing was held, and the judge issued written findings of fact and rulings of law. The judge concluded that the decree destroyed the joint tenancy; that each party was entitled to the benefit of the agreement; and that, because the decree constituted a final adjudication of Furnas's original petition, it resolved all issues relating to the parties' rights to the property and must be "afforded the

---

[3] The counterclaim sought a declaratory judgment and a finding of contempt against Cathleen. At a preliminary hearing, the judge informed the parties that the counterclaim was "procedurally ineffective" and instructed Furnas to file her own complaint. Furnas failed to do so. Nevertheless, the judge later ruled on the merits of the counterclaim. The parties do not dispute that the judgment on the counterclaim must be vacated.

protection of finality afforded a decree entered after [a] hearing." Based on these rulings, and finding that Furnas had not complied with the provision of the agreement mandating that she either refinance or sell the property, the judge found Furnas in civil contempt.[4] Furnas appealed, and after review by the Appeals Court, we granted her application for further appellate review.

Furnas presses several arguments for why the judge erred in finding that the agreement, as merged with the decree, severed the joint tenancy.[5] Because we conclude that the agreement, which was enforceable, clearly (1) severed the joint tenancy by destroying the unity of possession and, in addition, (2) waived the statutory formalities of the partition statute upon its merger with the decree, Furnas's remaining arguments do not

---

[4] At the time of the evidentiary hearing, Furnas had not listed the property for sale, nor had she refinanced the property or paid off the mortgage in full.

[5] Furnas's many arguments all are derivative of her central claim that, on Anthony's death, his interest in the property immediately passed to her by operation of law. See Smith v. Smith, 361 Mass. 733, 737-738 (1972) (property held by joint tenancy passes to survivor by operation of law and does not constitute part of decedent's estate). In support, Furnas points to the common law of property, the plain language of our partition statute, G. L. c. 241, and this court's most recent decision on joint tenancies, Battle v. Howard, 489 Mass. 480 (2022), as standing for the proposition that a joint tenancy cannot be severed or terminated absent a transfer, conveyance, or other alienation of interest.

warrant discussion except to the extent that we address them in notes 10, 14, 15, and 17, infra.

2.  Discussion.  a.  Standard of review.  The standard of review for a judge's decision is well established.  "The findings of fact of the judge are accepted unless they are clearly erroneous."  T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 456 Mass. 562, 569 (2010).  However, "[w]e review the judge's legal conclusions de novo."  Id.  See Anastos v. Sable, 443 Mass. 146, 149 (2004).

b.  Joint tenancy.  Joint tenancy "is a form of coownership arising under the common law and characterized by the right of survivorship."  Battle v. Howard, 489 Mass. 480, 483 (2022).  The right of survivorship "grows out of the application of common law principles wholly independent of statute."  Weaver v. New Bedford, 335 Mass. 644, 646 (1957).  "The creation and maintenance of a joint tenancy depends on the existence of four 'unities':  the unity of interest, the unity of title, the unity of time, and the unity of possession.  Battle, supra at 484 (joint tenancy exists so long as coowners of property "have one and the same interest, accruing by one and the same conveyance, commencing at one and the same time, and held by one and the same undivided possession" [citation omitted]).  "A joint tenancy is severed when any one of the four unities is

destroyed, including due to a unilateral act of one of the parties."  Id.[6]

Here, the unities of time and title are not in dispute because Anthony and Furnas took title to the property under the same instrument and at the same time.[7]  Therefore, the discussion shifts to the remaining unities:  possession and interest.

c.  Unity of possession.  There is a lacuna of Massachusetts cases dealing with the unity of possession; we therefore look to sister States, as well as esteemed treatises, for guidance.  As one of the four unities that make up a joint tenancy, "unity of possession" requires that "each joint tenant is in possession of the whole estate, and that each is also entitled to an equal undivided share of the whole."  Swink v. Fingado, 115 N.M. 275, 286 n.15 (1993), quoting 4A R. Powell, Real Property ¶ 617[1], at 51-9 (rev. ed. 1992).  7 R. Powell, Real Property § 51.03[1] (M. Wolf ed. 2023) (Powell).  See Ogilvie v. Idaho Bank & Trust Co., 99 Idaho 361, 367 (1978)

---

[6] Generally, in order to sever, the unilateral act "must clearly and unequivocally signify an intent to sever[; the] mere expression of intent to sever without a legally sufficient act does not effectuate a severance."  7 R. Powell, Real Property § 51.04[1][a] (M. Wolf ed. 2023).

[7] It is a rare case where the unity of time could seriously be said to be in dispute.  See 2 W. Blackstone, Commentaries *133  (unity of time, "which respects only the original commencement of the joint-estate, cannot, indeed, [being now past] be affected by any subsequent transactions").

("The unity of possession essential to the existence of a joint tenancy means that each joint tenant is entitled to the use and enjoyment of the whole property, as if a sole owner, subject to the other joint tenants' equal and undivided rights of possession").  Unity of possession likewise "requires joint tenants to have undivided interests in the whole, not undivided interests in the several parts."  Valdez v. Occupants of 3908 SW 24th St., Okla. City, 2011 OK 99, ¶ 13 n.5.

The agreement, as incorporated and merged with the decree, states in relevant part:  "[Anthony] agrees to remove his remaining personal items on or before September 30, 2018."[8]  Arguing that the decree did not sever the unity of possession, Furnas makes a distinction between the right of legal possession (and use) of property and mere physical possession of property;[9] specifically that, on signing the agreement, Anthony lost his right to the latter, not the former.

We disagree.  A joint tenancy is "terminated by any act destructive of its constituent unities."  4 Thompson on Real Property § 31.08(a) (3d Thomas ed. 2021).  Here, the decree

---

[8] Neither party disputes that Anthony complied with this term.

[9] Put another way, while Anthony's agreement to vacate the property may have had an impact on his physical possession, "it had no impact on [his] legal rights to the [p]roperty," inclusive of ownership status or how the property was titled.

altered Anthony's right to possession, thus severing the joint tenancy.[10]  It is true that, at common law, a joint tenant's decision to move out voluntarily does not destroy the unity of possession.  See Goetz v. Slobey, 76 A.D.3d 954, 956 (N.Y. 2010) (commencing partition action and moving out of property did not sever unity of possession because parties "were each still entitled to common possession of the entire . . . [p]roperty" until final partition decree).  However, Anthony did more than move out.  Per the terms of the agreement, Anthony lost his legal right to possess and enjoy the whole property prior to formal conveyance or alienation.  See Ogilvie, 99 Idaho at 367. In sum, Anthony's legal rights changed:  he could no longer have his possessions on the property.  Furnas's reliance on the distinction between legal possession and use versus physical possession and use therefore is inapt; Anthony clearly lost his "right" to both upon execution of the agreement.

---

[10] We therefore need not reach the question whether the decree also destroyed the unity of interest except to note that, contrary to Furnas's position, it cannot be that conveyance or sale of the subject property is, in every case, the only means to sever both the unity of interest and the unity of possession. If the unity of possession could never be severed without conveyance, then it would be duplicative of the unity of interest.  See, e.g., Attorney Gen. v. Clark, 222 Mass. 291, 293 (1915) ("A joint tenant . . . always may terminate the joint tenancy by transfer or conveyance of his interest" [emphasis added]).

d.  Partition.  Further, the incorporation of the parties'
agreement into the decree severed the joint tenancy; parties to
a partition are free to agree to terms different from those
enumerated in the partition statute.

Since colonial times, a coowner of a property in the
Commonwealth has had "a statutory right to petition the courts
to divide property that he or she no longer wishes to own
jointly with another."  Battle, 489 Mass. at 485, citing Cook v.
Allen, 2 Mass. 462, 469 (1807).  In its current form, the
partition statute allows "[a]ny person, except a tenant by the
entirety, owning a present undivided legal estate in land, not
subject to redemption . . . to have partition."  G. L. c. 241,
§ 1.  Here, Furnas filed a petition to partition the property
under G. L. c. 241, § 1; that petition was resolved two years
later by the parties' negotiated agreement, which was
incorporated and merged with the partition decree.[11]  Against
that backdrop, Furnas argues that this court's holding in Battle
states that it is conveyance alone that severs the unities, see
generally Battle, supra at 483-485, and because no sale,
conveyance, refinance, payment, or other divestment of the

_____

[11] The agreement provided in its introductory section that
"[t]he parties . . . hereby agree to resolve the matters
involving the [property] . . . as follows," and concluded with
the provision stating that "[t]he parties agree that this
[a]greement shall enter as the [j]udgment in this case."

property took place, all legal rights of the parties remained intact until Anthony's death.  Furnas misapprehends our holding in Battle.

In Battle, 489 Mass. at 481, a joint tenant filed a petition under G. L. c. 241, § 1, seeking a partition by sale. Pursuant to an interim order, the judge appointed a commissioner to sell the property.  Id. at 481-482.  After filing a valuation with the court and obtaining a warrant for the sale, the commissioner accepted an offer to purchase the property and filed a motion for authority to enter into a purchase and sale agreement.  Id. at 482.

Prior to a hearing on the commissioner's motion, the joint tenant who filed the original petition died.  Battle, 489 Mass. at 482.  The court held that the joint tenancy was not severed because, per the terms of the judge's interim order as well as the warrant, the final sale remained subject to the approval of the judge and the parties' right to object.  Id. at 491.[12]  The court clarified that, "with respect to a partition by sale, the operative act that upsets the four unities and severs a joint tenancy is the commissioner's conveyance of the property by deed to a buyer."  Id at 487.

---

[12] Indeed, the warrant expressly provided that the parties remained free to settle the matter consensually, including "by terminating the action for partition and maintaining . . . their joint tenancy."  Battle, 489 Mass. at 491.

The facts in <u>Battle</u> are readily distinguishable from those in the case at bar. While both sets of parties sought to dissolve their respective joint tenancies and relied initially on the partition statute, G. L. c. 241,[13] to do so, the parties here resolved their dispute through a private agreement that expressly resolved the partition action.[14] The parties in <u>Battle</u>, by contrast, did not. Of course, parties to a partition may agree to terms different from those enumerated in the statute; however, on regretting that decision, neither party

_____

[13] The partition statute provides for two forms of court-supervised partition: division and sale. G. L. c. 241, § 18. The former divides the subject property among the existing tenants and is binding on the entrance of "a final decree" by the court. <u>Id</u>. The latter splits the proceeds of sale amongst the tenants and is binding "at sale." <u>Id</u>. As Anthony was to receive proceeds for his interest in the property regardless of Furnas's choice to sell or refinance, only those portions of the statute concerning partition by sale are relevant here.

[14] To the extent Furnas argues that the agreement does not require her to <u>sell</u> the property ("the agreement only requires that [she] list the property for sale, because there are no defined terms requiring acceptance of an offer or the actual sale, only payment terms if a sale is actually effectuated"), that argument need not be discussed at length. The agreement, by its terms, clearly contemplates a sale in the event Furnas is unable to refinance or pay off the mortgage ("Upon the sale, each party shall receive . . ."). See <u>Robbins</u> v. <u>Krock</u>, 73 Mass. App. Ct. 134, 139 (2008), quoting <u>Fried</u> v. <u>Fried</u>, 5 Mass. App. Ct. 660, 664 (1977) ("We are guided by '[j]ustice, common sense and the probable intent of the parties' when interpreting the written agreement"); <u>Cadle Co.</u> v. <u>Vargas</u>, 55 Mass. App. Ct. 361, 366 (2002), quoting <u>Fishman</u> v. <u>LaSalle Nat'l Bank</u>, 247 F.3d 300, 302 (1st Cir. 2001) ("Common sense is as much a part of contract interpretation as is the dictionary or the arsenal of canons").

should expect to rely on the procedural rights and protections of the partition statute after electing to contract around it. See Nichols v. Nichols, 181 Mass. 490, 491-492 (1902) (objection to partition decree failed where party to partition proceedings waived statutory right to formal findings by requesting commissioners partition property certain way and "agreeing that it was the most advantageous [division] that could be made"). See, e.g., Roberts v. Jones, 307 Mass. 504, 506 (1940) (tenants in common temporarily may waive right to partition by mutual agreement).[15]

In Battle, we held that "with respect to a partition by sale, the operative act that upsets the four unities and severs a joint tenancy is the commissioner's conveyance of the property by deed to a buyer" (emphasis added). Battle, 489 Mass. at 487. For parties relying on the partition statute to effectuate a partition by sale, see G. L. c. 241, § 18, conveyance of the property is the sole act whereby all four unities are destroyed and the joint tenancy is legally severed. Battle, supra. See Cowden v. Cutting, 339 Mass. 164, 169-170 (1959) (property interests of coowners in action for partition by sale remain unchanged unless property is conveyed to buyer by commissioner's

---

[15] Consequently, Furnas's subordinate argument that the decree did not contain all the statutory requirements of partition under G. L. c. 241, § 10, must likewise fail. See Nichols, 181 Mass. at 491-492.

deed).[16]  Parties are free, however, to destroy the unities in all the usual ways prescribed by common law, or they may elect to partition the property through private settlement even after filing a formal petition.  See Calhoun v. Rawlins, 93 Mass. App. Ct. 458, 466 n.14 (2018), quoting Ratchford v. Ratchford, 397 Mass. 114, 116 (1986) (public policy of Massachusetts favors settlement of property disputes).  Here, the agreement signed by the parties accomplished both:  (i) it resolved all "matters involving the [property]" on its merger with the decree while (ii) simultaneously destroying the unity of possession.  See Battle, supra at 484; Goetz, 76 A.D.3d at 956.

e.  Enforcement.  General Laws c. 241, § 25, states, in relevant part:  "The court in which a petition has been brought under this chapter shall have jurisdiction in equity over all matters relating to the partition, and, in case of sale, over the distribution of the proceeds thereof . . . ."  By its terms, § 25 "does not address the trial courts' jurisdiction over a petition for partition.  That is the function of [G. L. c. 241,] § 2 ('Probate courts and the land court shall have concurrent jurisdiction of all petitions for partition')."  Battle, 489 Mass. at 496, quoting G. L. c. 241, § 2.  "Instead, § 25

---

[16] See also G. L. c. 241, § 18 ("The partition by division, when confirmed by a final decree under [§ 16], or the sale if partition is made by sale, shall be conclusive upon all persons named in the petition . . ." [emphasis added]).

establishes that a court having jurisdiction over a petition for partition also has supplemental jurisdiction 'in equity over all matters relating to the partition.'"  Id., quoting G. L. c. 241, § 25.

Here, the probate court entered the decree as a final judgment.  It is axiomatic that courts have the power to enforce valid judgments.  See Sommer v. Maharaj, 451 Mass. 615, 621 (2008), cert. denied, 556 U.S. 1235 (2009).  Notwithstanding, Furnas argues that the decree is not enforceable because the property vested fully in Furnas on Anthony's death.  Consequently, the estate lacked standing to pursue its claim[17] and the probate court relied improperly on its equitable powers to enforce the agreement.  See Weaver, 335 Mass. at 646.  Furnas is in error.

We have observed that "joint tenancies and the right of survivorship [are] . . . creatures of common law, and they have existed alongside . . . statutory scheme[s] for partition," such as G. L. c. 241, since colonial times (footnote omitted).

---

[17] Furnas argues that the trial judge erred in denying her motion to dismiss for lack of subject matter jurisdiction because the estate lacked standing.  "[S]tanding to bring an action for partition of land is conditioned on the petitioner's owning a present undivided legal estate in the land."  Battle, 489 Mass. at 485.  Based on our discussion infra, because we hold that Anthony's ownership interest in the property passed to his estate, Cathleen, as personal representative, had standing to enforce the decree on behalf of the estate.

Battle, 489 Mass. at 496.[18] Additionally, parties generally may alter common-law survivorship rights by agreement. See Finn v. Finn, 348 Mass. 443, 446 (1965) (separation agreement may preserve joint ownership of asset after divorce and bypass common-law rule converting marital joint ownership to postdivorce tenancy in common).

Based on the foregoing, the decree destroyed the unity of possession, thereby severing the joint tenancy and terminating the right of survivorship. See Powell, supra at § 51.04[1][a] (act "that operates to destroy or terminate any one or more of the essential unities . . . effects conversion of the joint tenancy into a tenancy in common and destruction of the right to survivorship"). As the decree entered prior to his death, Anthony's ownership interest in the property therefore passed to his estate. See West v. First Agric. Bank, 382 Mass. 534, 536 n.4 (1981), superseded by statute on other grounds, citing M. Park, Conveyancing § 125, at 120 (1968) ("at death the interest of a tenant [in common] descends to his heirs or passes to his devisees"). See also Yanolis v. Yanolis, 402 Mass. 470, 473 (1988) (if party to divorce dies after entry of judgment but

---

[18] See Cook v. Allen, 2 Mass. 462, 469 (1807) (referring to writs of partition under English common law prior to enactment of statute by Parliament); Province Laws 1693, c. 8, § 1 (predecessor to G. L. c. 241). See also Battle, 489 Mass. at 496 n.15 (joint tenancy and right of survivorship briefly abolished by statute between 1783 and 1785).

before resolution of appeal, judgment survives death).  The estate, in turn, was entitled to commence an action to enforce the decree.  See Sommer, 451 Mass. at 619, 621 (civil judgment generally enforceable against decedent's estate if decedent dies after entry of judgment).  Finally, because the issue of the agreement's effect on common-law survivorship rights is "'intimately interwoven with the petition for partition,' exclusive jurisdiction over the [estate]'s claim[] rest[s] with the probate court under [G. L. c. 241,] § 25."  Battle, 489 Mass. at 497, quoting O'Connor v. Boyden, 268 Mass. 111, 114-115 (1929).

Contrary to Furnas's position, the probate court had jurisdiction to enforce the agreement; it did not need to resort to its general equity powers.  See G. L. c. 241, §§ 2, 25.

3.  Conclusion.  For the reasons stated, we hold that Furnas's right of survivorship was terminated and that the agreement was enforceable by Anthony's estate.  We therefore affirm the judgment of civil contempt.  The dismissal of the counterclaim on the merits is vacated, and the case is remanded for entry of a judgment dismissing the counterclaim without prejudice.

So ordered.