NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

RAFAEL CEZAR DANAM,
*Plaintiff/Appellant*,

*v.*

ARIZONA BOARD OF EDUCATION,
*Defendant/Appellee*.

No. 1 CA-CV 18-0668
FILED 10-31-2019

Appeal from the Superior Court in Maricopa County
No.  LC2018-000093-001
The Honorable Patricia A. Starr, Judge

**AFFIRMED**

COUNSEL

Rafael Cezar Danam, N. Las Vegas, NV
*Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Kim S. Anderson
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge James B. Morse Jr. joined.

---

**J O H N S E N**, Judge:

¶1    Rafael Cezar Danam appeals from the superior court's judgment affirming a decision by the Arizona State Board of Education ("Board") to revoke his teaching certificates and to notify other states of that revocation. We conclude the Board's decision was supported by substantial evidence and was not contrary to law, arbitrary, capricious or an abuse of discretion. Accordingly, we affirm the superior court's judgment.

**FACTS AND PROCEDURAL BACKGROUND**

¶2    According to the record before the Board, Danam obtained a substitute teaching certificate and in August 2016, was working as a long-term substitute fourth-grade teacher at Diamondback Elementary School ("Diamondback") in the Bullhead Elementary School District. Danam did not have a contract for the school year, but rather worked on a "day-by-day basis." A month into the school year, the principal met with Danam outside his classroom and notified him that his substitute teaching assignment was ending and that a fully certified teacher would be returning to the school to replace him.

¶3    Immediately after the meeting, Danam asked an instructional aide to accompany him back to his classroom and be "a witness"; inside the classroom, Danam told his students "he would no longer be their teacher" and was "being asked to leave." As he spoke to the students, Danam became emotional and told them to "go home and tell your parents what [the principal] and the School Board is doing to me." This upset the students, some of whom became "very distraught" and began crying. The principal eventually arrived, calmed the students and sent Danam home.

¶4    Over the next few days, Danam repeatedly emailed the students' parents, the principal, the district assistant superintendent and others, demanding hearings and threatening litigation. Danam suggested parents could receive monetary damages if a lawsuit were filed and encouraged them to obtain medical attention for their children so they

2

could document "emotional and psychological distress." In one email, he suggested he would sue for $19,999.98 in damages in small claims court and would distribute $260 of that sum to each of his former students as compensation for their "emotional and psychological damages." Danam also recommended parents consider filing a class-action lawsuit for emotional and psychological damages exceeding one million dollars.

¶5            Damam also mailed a lengthy compilation of documents to the superintendent, with copies to the school board, other school administrators, parents, the Board, the mayor of Bullhead City and other municipal officials. The packet of documents purported to seek "Authorized & Sanctioned Board Review for Wrongful Termination" and to constitute "Official Notice of Pending Litigation & Preparation for Civil Proceedings, Notification of Multiple Federal & State Laws, Statutes and Regulations Violations." One page of the packet was directed to the principal and assistant superintendent. In it, Danam asserted that the "current circumstances" were the "direct consequence of" actions by the principal and assistant superintendent and asserted, "Whoever sows injustice reaps calamity," "Be assured that exact and precise justice will be manifested," and "You will not escape the consequences." Another document he later faxed to the school read "Justice, Vindication & Vengeance" and "Vengeance is MINE, I will repay." This last document prompted the principal to obtain an injunction against workplace harassment against Danam.

¶6            In October 2016, the Board notified Danam he was the subject of a formal professionalism investigation based on his conduct with the students on the day he was terminated and the threatening documents he sent to school officials thereafter. In March 2017, Danam applied for a teaching position at Laveen Elementary School District; on his application, he answered "[n]o" in response to the question, "Have you ever been the subject of a school district or Department of Education . . . investigation, inquiry, or review of alleged misconduct?" After the Laveen district hired Danam, it learned he was under Board investigation. When the district asked Danam about his apparent false statement, he resigned.

¶7            In August 2017, the Board served Danam with a complaint that alleged professional misconduct based on his statements to his students and their parents, his harassing communications to school officials and the misrepresentation on his application for employment in the Laveen district.

¶8            The Board's Professional Practices Advisory Committee ("Committee") conducted a hearing on the Board's complaint. In the hearing, Danam was permitted to testify, call and cross-examine witnesses and offer documents in evidence. After the hearing, the Committee concluded Danam engaged in three types of unprofessional conduct: (1) he failed to "make reasonable efforts to [protect] pupils from conditions harmful to learning, health, or safety," Arizona Administrative Code ("A.A.C.") R7-2-1308(A)(1); (2) he "[f]alsif[ied] or misrepresent[ed] documents, records, or facts related to professional qualifications or educational history or character," A.A.C. R7-2-1308(B)(6); and (3) he "[e]ngag[ed] in conduct which would discredit the teaching profession," A.A.C. R7-2-1308(B)(15).[1]   The Committee recommended the Board discipline Danam by revoking his teaching certificates and informing "all states and territories" of the revocation.

¶9            The Board adopted the Committee's findings of fact with minor changes, adopted the Committee's conclusions of law, and ordered Danam's teaching certificates revoked and that other states and territories be notified of the revocation. Danam filed a motion for rehearing; the Board denied it, concluding he failed to establish any grounds for a rehearing as required by A.A.C. R7-2-709(B).

¶10            Danam filed a notice of appeal to the superior court, then, 55 days later, filed in that court a "Motion for New Evidence and Witnesses for Judicial Review of Administrative Decision." The superior court treated Danam's filing as a motion for an evidentiary hearing and denied it.

¶11            The superior court then affirmed the Board's decision. It concluded (1) the Board did not violate Danam's right to due process or his right to free speech, (2) the Board's decision was not arbitrary, capricious or an abuse of discretion, (3) substantial evidence supported the Board's decision and (4) the Board properly denied Danam's motion for rehearing.

---

[1]            Absent material revision after the relevant date, we cite the current version of a statute or rule.

Danam timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2019) and -913 (2019).[2]

## DISCUSSION

**¶12**　　　　We will affirm an administrative agency's decision unless it is "contrary to law, is not supported by substantial evidence, is arbitrary and capricious or is an abuse of discretion." A.R.S. § 12-910(E) (2019). "We defer to the agency's factual findings if they are supported by substantial evidence, even if other evidence before the agency would support a different conclusion." *Waltz Healing Ctr., Inc. v. Ariz. Dep't of Health Servs.*, 245 Ariz. 610, 613, ¶ 9 (App. 2018). "We consider the evidence in a light most favorable to upholding the agency's decision." *Id.* Nonetheless, we apply our "independent judgment" to questions of law. *See Webb v. State ex rel. Ariz. Bd. of Med. Exam'rs*, 202 Ariz. 555, 557, ¶ 7 (App. 2002).

## A.　　The Board Did Not Violate Danam's Due-Process Rights.

**¶13**　　　　Danam argues the Board violated his due-process rights by denying, ignoring or omitting evidence he wanted to offer at the Committee hearing. *See generally* U.S. Const. amend. XIV; Ariz. Const. art. 2, § 4. We review questions of law *de novo*. *See Webb*, 202 Ariz. at 557, ¶ 7.

**¶14**　　　　Board rules set out the procedures that govern disciplinary hearings. The Board established the Committee to "conduct hearings related to certification" issues involving unprofessional conduct and the revocation of certificates. A.A.C. R7-2-701(8); *see* A.A.C. R7-2-205(A) (Committee "shall act in an advisory capacity to the [Board] in regard to certification or recertification matters related to immoral conduct, unprofessional conduct, unfitness to teach, and revocation, suspension, or surrender of certificates."). At the hearing before the Committee, parties have the "right to submit evidence in open hearing and conduct cross examination." A.A.C. R7-2-705(C); *see also* A.A.C. R7-2-715(C). Upon request of a party, the Department of Education ("Department") may issue subpoenas for witnesses, documents and other evidence. A.A.C. R7-2-712(A). After the Committee issues its recommendation following a

---

[2]　　　　Although § 12-913 expressly allows a party to appeal to the "supreme court," we have construed this provision as "also allowing an appeal to the court of appeals, which was created after § 12-913 was enacted." *Svendsen v. Ariz. Dep't of Transp., Motor Vehicle Div.*, 234 Ariz. 528, 533, ¶ 13 (App. 2014).

hearing, the Board reviews the hearing record and the Committee's recommendation and issues its decision. *See* A.A.C. R7-2-718.

¶15         The right to procedural due process "includes the right to notice and opportunity to be heard at a meaningful time and in a meaningful manner." *Salas v. Ariz. Dep't of Econ. Sec.*, 182 Ariz. 141, 143 (App. 1995). Here, the Board provided Danam with adequate opportunity to be heard at the hearing before the Committee. In its complaint, the Board notified Danam of the factual allegations against him, the three grounds on which the charges of unprofessional conduct were based, and the nature of the discipline the Board proposed to impose. The complaint also listed the witnesses and exhibits the Board anticipated offering at the hearing.

¶16         When the hearing commenced, the hearing officer asked Danam if he had any exhibits to offer; Danam replied that he had submitted documents to the Department's Investigation Unit, but "nothing has been done . . . on those at all." The hearing officer then told Danam he "ha[d] the opportunity to submit relevant documents." Danam then offered, and the hearing officer admitted, Danam's response brief and two letters signed by the Diamondback school principal. During the hearing, Danam testified and cross-examined each of the State's witnesses.

¶17         Although Danam expressed concern at the hearing that he was unfamiliar with the Committee's "protocol" and that he could not bring the students' parents to testify for lack of financial resources, Danam had the option to, and contends he did, obtain affidavits from some of the parents. He did not, however, offer the affidavits in evidence at the hearing.

¶18         As noted, Danam filed a "Motion to Rehear Case," but he did not argue in that motion that the hearing officer rebuffed any attempt he had made to call witnesses or offer affidavits at the hearing. The same day Danam filed his motion for rehearing, he also filed with the Board an "Appeal Brief" to which he attached several documents he characterized as affidavits. But he did not argue the hearing officer had precluded him from calling witnesses on his behalf. Nor did he argue that the hearing officer refused to admit or the Committee or the Board failed to consider any affidavits he offered in evidence. Instead, in his "Appeal Brief," Danam cited as an error the Department's "[f]ailure . . . to provide official record of affidavits obtained by current and former parents of Diamondback Elementary School." But it was Danam's choice to offer evidence on his behalf, not the Board's obligation to do so. When a party is provided the opportunity to be heard and "chooses not to exercise it," that party cannot later claim to have been denied procedural due process. *Watahomigie v.*

*Ariz. Bd. of Water Quality Appeals*, 181 Ariz. 20, 27 (App. 1994).  Moreover, unrepresented parties such as Danam are held "to the same standards as attorneys."  *Flynn v. Campbell*, 243 Ariz. 76, 83, ¶ 24 (2017).

**¶19**        Because the Board provided Danam with meaningful notice and opportunity to be heard at the hearing, it did not violate his due-process rights.[3]

## B.    Substantial Evidence Supported the Board's Factual Findings.

**¶20**        "We will not disturb an agency's factual findings that the evidence substantially supports."  *JH2K I LLC v. Ariz. Dep't of Health Servs.*, 246 Ariz. 307, 310, ¶ 8 (App. 2019).  "If two inconsistent factual conclusions could be supported by the record, then there is substantial evidence to support an administrative decision that elects either conclusion."  *DeGroot v. Ariz. Racing Comm'n*, 141 Ariz. 331, 336 (App. 1984) (citation omitted).

**¶21**        The Board found Danam (1) upset his students by emotionally telling them that he would no longer be their teacher, (2) later sent emails to parents encouraging litigation and documents to school officials threatening vengeance, then (3) still later, lied on an employment application about not having been under Department investigation.

**¶22**        In support of those findings, Diamondback's principal testified that after he told Danam his teaching assignment was ending, the principal entered Danam's classroom and found the fourth-grade students "look[ing] disheveled" and saw "a lot of kids crying, a lot of people upset [and] a few kids yelling."  The instructional aide in the classroom testified that Danam became "emotional" when telling the students he would "no longer be their teacher" and was "being asked to leave."  She testified that an "agitated" Danam then insisted the students "go home and tell their parents what [the principal] and the School Board was doing to him," and that the students "were very distraught" and started crying.  The aide

---

[3]      Danam also argues the Board violated due process by relying on "false and perjured testimony," but for that proposition he relies only on evidence not offered at the hearing.  *See* A.R.S. § 12-910(D) (review by appellate court limited to "record of the administrative proceeding" unless superior court holds evidentiary hearing or trial *de novo*); *GM Dev. Corp. v. Cmty. Am. Mortg. Corp.*, 165 Ariz. 1, 4 (App. 1990) ("An appellate court's review is limited to the record before the trial court.").  He also argues that the Board and the superior court violated due process because they were biased, but he offers no evidence to support this argument.

explained she then took the students to the bathrooms to "calm themselves down."

¶23 Further evidence showed Danam sent written threats to the school principal and the district's assistant superintendent, which prompted the principal to obtain a workplace harassment injunction against Danam. *See supra* ¶ 5. Danam also repeatedly emailed parents, urging them to seek medical attention for the emotional distress their children purportedly experienced and encouraging a multimillion-dollar lawsuit on their behalf. One parent testified Danam left her multiple late-night voicemails and asked her to "set fire on his behalf" and "write papers."

¶24 Finally, the Committee heard evidence that in Danam's 2017 application to Laveen Elementary School District, he falsely answered "[n]o" when asked whether he has "ever been the subject of a school district or Department of Education . . . investigation, inquiry or review of alleged misconduct." At the hearing, Danam admitted he received and responded to the Department's "Notice of Investigation" letter in 2016.

¶25 As reflected by this account of the evidence, the Board's factual findings were amply supported by substantial evidence. *See* A.R.S. § 12-910(E).

## C. The Board's Legal Conclusions and the Discipline It Imposed Were Not Arbitrary, Capricious or an Abuse of Discretion.

¶26 We also conclude that based on the Board's factual findings, its conclusions that Danam acted unprofessionally under R7-2-1308(A)(1), (B)(6), and (B)(15) and its decision to revoke his teaching certificates were not arbitrary, capricious or an abuse of discretion. *See* A.R.S. § 12-910(E). A decision is "arbitrary" if it is "unreasoning action, without consideration and in disregard of the facts and circumstances." *Maricopa County Sheriff's Office v. Maricopa County Emp. Merit Sys. Comm'n*, 211 Ariz. 219, 222, ¶ 14 (2005) (citation omitted). "An 'abuse of discretion' is discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Torres v. N. Am. Van Lines, Inc.*, 135 Ariz. 35, 40 (App. 1982). "A decision supported by substantial evidence may not be set aside as being arbitrary and capricious." *Smith v. Ariz. Long Term Care Sys.*, 207 Ariz. 217, 220, ¶ 14 (App. 2004).

¶27 On the record presented, the Board did not err by concluding Danam acted unprofessionally by failing to "[m]ake reasonable efforts to prevent pupils from conditions harmful to learning, health, or safety," R7-2-1308(A)(1); "[f]alsify[ing] or misrepresent[ing] documents, records, or

facts related to professional qualifications or educational history or character," R7-2-1308(B)(6); and "[e]ngag[ing] in conduct which would discredit the teaching profession," R7-2-1308(B)(15). The Board's decision was reasonable and well-supported by the evidence. *See Smith*, 207 Ariz. at 220, ¶ 14; *Torres*, 135 Ariz. at 40.

**¶28** The Board also did not err in revoking Danam's teaching certificates and notifying other states of the revocation. Contrary to Danam's contention that the revocation violated A.R.S. § 15-203(A)(20) (2019) as an excessive penalty, the Board's discipline fell squarely within its statutory authority to "supervise and control the certification of persons engaged in instructional work" and "[i]mpose such disciplinary action, including the . . . revocation of a certificate, on a finding of immoral or unprofessional conduct." A.R.S. § 15-203(A)(14), (20); *see also* A.A.C. R7-2-1308(C) ("Individuals found to have engaged in unprofessional or immoral conduct shall be subject to, and may be disciplined by, the Board."); *Petras v. Ariz. State Liquor Bd.*, 129 Ariz. 449, 452 (App. 1981).

**¶29** In sum, we conclude the Board's conclusions and the discipline it imposed were not arbitrary, capricious or an abuse of discretion.[4]

## D. The Board Did Not Abuse Its Discretion in Denying Danam's Motion for Rehearing.

**¶30** Danam argues the Board improperly denied his motion for rehearing. We review the Board's denial of a motion for rehearing for abuse of discretion. *See O'Neal v. Indus. Comm'n*, 13 Ariz. App. 550, 552 (1971).

---

[4] Danam also argues the decisions of the Board and the superior court defamed him in violation of his constitutional rights under 42 U.S.C. § 1983 (2018). Any cause of action for defamation or claim under § 1983 falls outside the scope of our review. *See* A.R.S. § 12-910(E) (limiting superior court review to whether agency action was "contrary to law, . . . not supported by substantial evidence, . . . arbitrary and capricious or . . . an abuse of discretion"); A.R.S. § 12-913. In any event, to be defamatory, a publication must be false, *Turner v. Devlin*, 174 Ariz. 201, 203 (1993), and we already have determined that substantial evidence supported the Board's factual findings. *See supra* ¶¶ 21-25.

¶31      Arizona Administrative Code R7-2-709(B) provides:

A rehearing of a decision by the Board may be granted for any of the following causes materially affecting the moving party's rights:

1.  Irregularity in the administrative proceedings of the hearing body, or abuse of discretion, whereby the moving party was deprived of a fair hearing.

2.  Misconduct of the hearing body or the prevailing party.

3.  Accident or surprise which could not have been prevented by ordinary prudence.

4.  Newly discovered material evidence which could not with reasonable diligence have been discovered and produced at the hearing.

5.  Excessive or insufficient penalties.

6.  Error in the admission or rejection of evidence or other errors of law occurring at the administrative hearing.

7.  That the decision is not justified by the evidence or is contrary to the law.

¶32      A motion for rehearing must "specify[] the particular grounds therefor." A.A.C. R7-2-709(A).  Here, Danam's motion for rehearing did not cite any grounds under R7-2-709(B); rather, it generally alleged due-process violations and discrepancies in the hearing.  As we discussed above, *see supra* ¶¶ 13-19, no due-process violation occurred.  In the "Appeal Brief" he filed at the same time, Danam offered an extensive list of evidence he wanted to use at the rehearing but failed to show any of it was "[n]ewly

discovered material evidence" that he could not have discovered and offered at the original hearing with reasonable diligence. A.A.C. R7-2-709(B)(4).[5] Danam also failed to substantiate the other numerous grounds he cited for rehearing.

**¶33** Because Danam failed to establish any grounds for a rehearing under R7-2-709(B), the Board did not abuse its discretion by denying his motion for rehearing.

**E.     The Superior Court Did Not Abuse Its Discretion by Denying Danam's Motion for an Evidentiary Hearing.**

**¶34** Danam argues the superior court erred by denying his motion for an evidentiary hearing. We review the court's denial of a motion for an evidentiary hearing for abuse of discretion. *Am. Power Prods., Inc. v. CSK Auto, Inc.*, 239 Ariz. 151, 154, ¶ 10 (2016).

**¶35** The superior court properly denied Danam's motion as untimely. Arizona Rule of Procedure for Judicial Review of Administrative Decisions 10(c) required Danam to file his motion for an evidentiary hearing "within 30 days after the filing of the notice of appeal." Danam filed his motion 55 days after filing his notice of appeal. Even though he was representing himself, he still was required to comply with applicable procedural rules. *See Flynn*, 243 Ariz. at 83, ¶ 24.

**¶36** Timeliness aside, the superior court also did not abuse its discretion by denying Danam's motion because he failed to "identif[y] why new evidence and/or witnesses [were] required in order for the Court to make its determination on appeal." *See* A.R.S. § 12-910(A) (instructing court to hold evidentiary hearing "*to the extent necessary* to make the determination required by subsection E") (emphasis added).

---

[5]     We note that the affidavits Danam attached to his motion for rehearing did not refute any material findings of fact underlying the Board's decision. The affidavits purportedly were authored by students and their parents or caretakers; they said Danam was a good, well-liked teacher and that students were sad and upset when he left. They also expressed displeasure at Danam's termination. These affidavits were not material to the issues of whether Danam acted unprofessionally after he was terminated and what discipline, if any, was appropriate. *See* A.A.C. R7-2-709(B)(4).

**F.    The Board and the Superior Court Did Not Violate Danam's Free-Speech Rights.**

**¶37**        Danam argues the Board and superior court violated his rights to free speech under the federal and state constitutions.  *See generally* U.S. Const. amend. I; Ariz. Const. art. 2, § 6.  Specifically, he contends that because his statements addressed issues of public concern and he was not unprofessional in criticizing Diamondback's principal, the Board's discipline violated his free-speech rights.  In support of this argument, he cites *Pickering v. Board of Education of Township High School District 205*, 391 U.S. 563 (1968).  We review questions of law *de novo*.  *See Webb*, 202 Ariz. at 557, ¶ 7.

**¶38**        Danam's reliance on *Pickering* is misplaced.  In that case, the board of education fired a teacher after the local newspaper published the teacher's letter criticizing the board's handling of bond proposals and resource allocation and accused the superintendent of preventing teachers from criticizing the bond proposal.  391 U.S. at 564-66.  The Court held the board violated the teacher's First Amendment rights by firing him for the letter.  *Id.* at 565.

**¶39**        In concluding that the teacher's letter constituted protected speech, the Court made clear that the teacher's statements concerned school funding, an issue of "legitimate public concern," and were "neither shown nor [could] be presumed to have in any way either impeded the teacher's proper performance of his daily duties in the classroom or to have interfered with the regular operation of the schools generally."  *Id.* at 569, 571-73 (footnote omitted).  Thus, as Danam himself acknowledges, the proper free-speech analysis under *Pickering* hinges on whether the speech at issue was "inappropriate and unprofessional."

**¶40**        Here, Danam's statements are a far cry from the teacher's letter to the editor in *Pickering*.  First, the statements Danam made to his students, the threatening documents he sent to school officials and his communications to parents all concerned a private employment matter, not an issue of public concern.  Second, the evidence showed Danam interrupted and impeded the school day by making students distraught, required the instructional aide to calm the students down by taking them outside and forced the principal to have a discussion with students about the situation in the middle of the school day.  Further, Danam's threatening communications to school officials prompted the principal to obtain an injunction against workplace harassment, and Danam's emails, late-night calls and voicemails to parents were inappropriate and caused concern.

**¶41** In short, the Board disciplined Danam not for what he said, but for what he *did*: He failed to protect students from "conditions harmful to learning, health, or safety," he lied on his 2017 employment application about having been under Department investigation, and he acted in a manner which "discredit[ed] the teaching profession." A.A.C. R7-2-1308(A)(1), (A)(6), (B)(15). For these reasons, Danam's claimed free-speech violation fails.[6]

## CONCLUSION

**¶42** We conclude substantial evidence supported the Board's decision and the decision was not contrary to law, arbitrary, capricious or an abuse of discretion under A.R.S. § 12-910(E). Accordingly, we affirm the superior court's judgment upholding the Board's decision.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

[6] Danam also argues the Board and the superior court violated his right to petition for redress of grievances. *See generally* U.S. Const. amend. I; Ariz. Const. art. 2, § 5. As relevant here, this right "bars state action interfering with access to . . . the judicial branch." *Ruiz v. Hull*, 191 Ariz. 441, 457, ¶ 61 (1998). Danam offers no evidence that the administrative or appellate process unconstitutionally interfered with his access to the judicial branch. As we have discussed, *see supra* ¶¶ 13-19, Danam received adequate opportunity to be heard at the Committee hearing and he has availed himself of his right to appeal the Board's decision.